MARTIN, HENRY F., Jr., Associate Judge.
Appellant, plaintiff below, appeals from an adverse judgment on the pleadings entered upon defendant appellee’s motion pursuant to Rule 1.140(c) F.R.C.P., 30 F. *640 S.A. The parties will be referred to as they stood in the trial court.
The only pleadings before the trial court were the complaint and answer. It is well established that the allegations of the answer are deemed denied, where no reply is required, and such allegations cannot be a basis for any such judgment on the pleadings. City of Pompano Beach v. Oltman, Fla.App.1969, 228 So.2d 610; Miller v. Eatmon, Fla.App.1965, 177 So.2d 523. The test to be applied was spelled out in Reinhard v. Bliss, Fla. 1956, 85 So.2d 131, 133, as follows:
“In passing on such motion made by defendant all well pleaded material allegations of the complaint and all fair inferences to be drawn therefronj must be taken as true and the inquiry is whether the plaintiff has stated a cause of action by his complaint. The test we apply in this instance is the same as if defendant has made a motion to dismiss the complaint for ‘failure to state a cause of action’ under State rule 1.11(b) (6). The allegations of the defendant’s answer are of no avail to him at a hearing on defendant’s motion for decree on the pleadings.”
The allegations of the complaint together with the exhibits attached thereto disclose that plaintiff seeks recovery against defendants as comakers of a promissory note dated October 8, 1966. Originally there were three comakers, namely: Paint Fair Stores, Inc., a corporation and the two present defendants individually. Defendants were also president and secretary respectively of the corporation and executed the note on its behalf. Subsequently, the corporate maker filed a voluntary petition in bankruptcy during the course of which plaintiff accepted 12%% thereof “in full compromise, satisfaction settlement and discharge of its said claim against Paint Fair Stores, Inc.” The said settlement agreement contained an express reservation of rights against “any endorser, guarantor or surety” on said promissory note.
The lower court concluded that the release or discharge of one of the principal debtors on such promissory note without an express reservation of rights against defendants as “comakers”, rendered the cause of action fatally defective and entered judgment accordingly.
On appeal, plaintiff contends that no express reservation of rights is necessary because of a specific provision in the Bankruptcy Act itself. 11 U.S.C.A. Section 34 provides:
“The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt.”
Appellee contends that this case involves a compromise of a claim during the bankruptcy proceeding and that the above quoted section is therefore inapplicable since no discharge is involved. No Florida cases on this precise point have been cited or found, however, a very analogous case is Lutz v. Frick Company, 1962, 242 Ind. 599, 181 N. E.2d 14 and cases therein cited. The rule which emerges from these authorities and which is supported by reason and logic is that general state law governs the rights and obligations of the parties to a compromise agreement reached during the progress of a bankruptcy proceeding. The pen-dency of such proceeding does not affect the application of such state law.
The promissory note here involved was executed prior to the effective date of the Uniform Commercial Code. The note was executed October 8, 1966 and the code became effective January 1, 1967 and applies to transactions occurring after that date.[1] The pre-code Florida law with respect to negotiable instruments was the Negotiable Instruments Law (NIL) being Chapters 674, 675 and 676, Fla.Stat.(1965), F.S.A. *641 An accurate statement of pre-code law is contained in 11 Am.Jur.2d, Bills and Notes, Section 909 as follows:
“The general rule that the release of one codebtor releases the other codebtors applies to the release of one or more — less than all — of the obligors on a promissory note who are jointly or jointly and severally bound. This was true before the adoption of the NIL, and is the rule under the NIL by virtue of the provision of that act that a negotiable instrument is discharged by any act which will discharge a simple contract for the payment of money. The reason often advanced in support of this rule is, that since the debtors have a right of contribution among themselves, the releasing creditor ought not to be allowed to enforce his claim against one whose remedy of contribution has been destroyed by the release.
“Obviously, this rule, in its application to negotiable instruments, is subject to the same limitations and exceptions as in the case of other contracts for the payment of money, which are discussed under another title. The release by the holder of a promissory note of one of its comakers does not release the other makers where it is done at their request or with their consent.”
Professor Corbin, while disagreeing with the reasons advanced for the rule, does acknowledge its existence and refers to it “as a trap into which many an obligee has fallen”,[2] and further points out that the American Law Institute declined to accept the rule in its Restatement of Contracts.[3] Corbin also explains that whatever distinctions may have existed originally between obligors bound “jointly” or “jointly and severally” for the performance of a single promise have been obliterated with the passage of time and that the rule under discussion applies equally to either situation.[4] Florida follows this general rule as disclosed in Feiner’s Organization v. Caffina, Fla.1955, 77 So.2d 8S2.[5]
The theory upon which a reservation of rights avoids the release of other comakers is that it is construed to be a covenant not to sue rather than a release.[6] The attempted reservation of rights in the case at bar falls short of meeting the necessary prerequisites to prevent the release of the defendants as comakers since it refers only to persons who are secondarily liable.
One of the exceptions to the general rule requires examination in the present case, that is, the consent of the defendants to the release of the corporate comaker. Consent of this nature need not be express but may be implied from the relationship and conduct of the parties together with *642 the facts and circumstances surrounding the release or discharge of one or more but less than all of the comakers. Cases which have considered facts similar to those in the present case have concluded that a question of fact on the issue of consent is presented where one comaker has executed the instrument individually and on behalf of the corporate comaker as its president and is thereafter active in negotiating and procuring the release of such corporate comaker. In London Leasing Corporation v. Interfina, Inc., 53 Misc.2d 657, 279 N.Y.S. 2d 209, 213, the Court stated:
“The fundamental question presented on this motion is whether a corporate officer (president) who makes a note on behalf of his corporation and, also, personally endorses that note is discharged from personal liability on the note by an agreement between the payee and the corporate maker, by its said president, which extends, the corporate maker’s time to pay the note.”
* * * * * *
“The application of this principle to the present question mandates a holding that defendant Evans consented to the extension. As a matter of fact he applied for, negotiated, signed in his corporate capacity and received the agreements extending the time for payment. While mere knowledge or acquiescence is not, in and of itself, sufficient to prevent discharge, the defendant’s conduct here far exceeded these limits and under the special circumstances here presented, constituted consent.”
It is apparent that the legal relationship of the parties in that case is somewhat different being maker and endorser, however, the question of “consent” is essentially the same in either situation. To the same effect is A. J. Armstrong Co., Inc. v. Janburt Embroidery Corp., 97 N.J.Super. 246, 234 A.2d 737, 745 (1967).
In the present case the complaint and exhibits attached thereto together with the reasonable inferences therefrom disclose that the coobligors seeking discharge are the president and secretary respectively of the corporate maker and that the corporation filed its voluntary petition in bankruptcy subsequent to its default in the payment of the promissory note being sued upon. Thereafter plaintiff and the corporation, acting through its officers, arrived at a compromise and settlement pursuant to which said corporation paid 12%% of the total indebtedness. The summons and complaint further discloses that service of process in this cause was had upon both individual defendants at the office of said corporate maker, Paint Fair Stores, Inc., at a time subsequent to the execution of the compromise agreement in question which indicates that both defendants continue to participate in the conduct of the corporate affairs. These facts and circumstances are sufficient to raise issues of fact as to the extent of participation of defendants in initiating negotiations leading up to the compromise and in the execution thereof to determine whether or not “consent” was present. The complaint, therefore, states a cause of action precluding the entry of Judgment on the Pleadings, and the case must be reversed and remanded to the court below for further proceedings.
Reversed.

. 19A F.S.A. page 21.

. 4 Corbin, Contracts, Section 931.

. Restatement, Contracts, Section 123:
“Where the obligee of joint and several contractual promises discharges a prom-isor by release, rescission, or accord and satisfaction, the other promisors are thereby discharged from their joint duty, but not from their several duties, except in the cases and to the extent required by the law of suretyship.”

. 4 Corbin, Contracts, Sections 925, 931. Section 931 states:
“In the case of the joint and several promise, however, the common law courts generally held that a release or other complete discharge of one discharged them all. Sometimes this may have been due to simple confusion of 245 So.2d — 4'1 mind, because of the complexity of the situations involving more than two parties and the barren technicality that arose out of this complexity.”

. In Feiner’s Organization v. Caffina, supra, the Supreme Court of Florida stated:
“If it was a contract whereby both buyers and sellers became primarily jointly liable to the plaintiff for the full amount of the commission, the release would bar the present claim absolutely, under the familiar principle, adhered to by the great majority of the courts, that a release of one joint contract obligor releases all.”

. 45 Am.Jur., Release, Section 34; 4 Corbin Contracts, Sections 932 and 933.