405 So.2d 269 (1981)
STEPHEN BODZO REALTY, INC., Appellant,
v.
WILLITS INTERNATIONAL CORP., Licron Corp. of New York, John F. Willits and Richard Siemens, Appellees.
No. 80-1470.
District Court of Appeal of Florida, Fourth District.
October 28, 1981.
*270 Thompson & Gesch, and Larry Klein, West Palm Beach, for appellant.
Montgomery, Lytal, Reiter, Denney & Searcy, P.A., and Edna L. Caruso, West Palm Beach, for appellee-Siemens.
HERSEY, Judge.
This was an action brought by Stephen Bodzo Realty, Inc. to recover a fee for consulting services rendered to Licron Corporation, its president, Richard Siemens, Willits International Corporation, and its president, John Willits, all of whom are said to be jointly or jointly and severally liable on a contract to pay appellant the sum of $342,000.00. Various counterclaims were filed. The litigation proceeded in straightforward fashion until appellant entered into a settlement agreement with appellees, Willits International Corporation and John Willits, for a portion of the total amount due. In exchange for $70,000 and an agreement for continued cooperation in the litigation, appellant gave assurances calculated to hold these appellees harmless from further expense related to this cause of action. The difficulty is that appellees Licron and Siemens take the position that the written settlement agreement constitutes a general release bringing into play the time-honored principle that release of one joint or joint and several obligor constitutes a release of all, so that these appellees are no longer obligated to appellant. Bodzo, on the other hand, interprets the settlement agreement as a covenant not to sue which has the effect of preserving its rights against those joint or joint and several obligors not specifically protected by the covenant.
The trial court entered a summary judgment determining that Licron and Siemens were initially liable on the consulting services contract, reserving for trial the issue of the effect of the settlement agreement. Trial resulted in a judgment adverse to appellant on the grounds that the settlement agreement constituted a release, the effect of which was to release all of the joint or joint and several obligors, including, of necessity, Licron and Siemens.
Neither party on appeal seriously questions the proposition that under Florida law a release of one joint or joint and several obligor constitutes a release of all of the joint or joint and several obligors. This rule was cited with approval as one "adhered to by the great majority of the courts, ..." in Feiner's Organization, Inc. v. Caffina, 77 So.2d 852, 853 (Fla. 1955). The rule was followed and applied by this Court in Flowers v. Miskoff, 233 So.2d 201 (Fla.4th DCA 1970).
A different result follows from use of a covenant not to sue. The distinction between a release and a covenant not to sue is explained in Atlantic Coast Line Railroad Co. v. Boone, 85 So.2d 834 (Fla. 1956) at page 843:
A release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers. A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular covenantee.
This definition suggests a simple test for determining whether a particular instrument is a release or a covenant not to sue. If the entire obligation is discharged then the document is a release and all of the joint or joint and several obligors are discharged. If the obligation continues with merely an agreement not to proceed against one party then it is a covenant not to sue and the obligors are not discharged. But this test is simpler to state than to apply. We therefore analyze further.
If the instrument under scrutiny, like most contracts, is susceptible of construction by a court where an ambiguity makes the intention of the parties not only relevant but also admissible, it is ordinarily permissible to look behind the structured *271 phrases of the formal document in an attempt to determine what the parties would have said had they foreseen the occurrence which has occasioned litigation. However, such an effort would be futile since in Florida the release of one joint and several obligor releases all other joint and several obligors even though the release expressly states that it is not the intention of the obligee to release any other joint and several obligor and expressly reserves the right of the obligee to sue any and all other joint and several obligors. Penza v. Neckles, 344 So.2d 1282 (Fla. 1977). The Penza court apparently relied on the earlier case of Louisville & N.R. Co. v. Allen, 67 Fla. 257, 65 So. 8 (1914) which involved joint tortfeasors rather than joint contract obligors. This creates a curious anomaly because this rule as to joint tortfeasors has been expressly changed by statute. § 768.041, Fla. Stat. (1979).
It had previously been assumed that a release which contained a reservation of rights should be construed as a covenant not to sue. See, e.g., Glidden Company v. Zuckerman, 245 So.2d 639 (Fla.3d DCA 1971). This had long been the rule at common law. See Matheson v. O'Kane, 211 Mass. 91, 97 N.E. 638 (1912) and cases there cited. Further, such a rule is the cornerstone upon which Professor Corbin, in his monumental work on contracts, constructs his theory of the distinction between the two legal concepts of "release" and "covenant not to sue." At the very least Corbin was a strong protagonist for the view opposite to that adopted in the Florida cases. Corbin's criticism of the futile efforts that have been made by the courts to shed light on this shadowy area is worth repeating here, if only to emphasize that the questions involved, while not novel, have nonetheless proved perplexing. After pointing out that it took centuries for the courts to finally give recognition to a reservation of rights in a release by relabelling the instrument a covenant not to use, in order to carry out the clear intention of the parties to the instrument, Professor Corbin concludes:
A retrospective survey of the many long opinions, in cases of both contract and tort, in which a release with reservation has been held to be a covenant not to sue, and in which also this imaginary "covenant" has been refused its normal effect as a discharge because otherwise the "reservation" would be made ineffective contrary to the obligee's intention, creates the impression of legalistic verbiage gone mad. How much simpler to hold directly that a release effective as to one obligor does not release the others if the intention not to release them is clear and full satisfaction has not been received! What a vast amount of litigation, some of it still going on, would have been avoided! What price justice!
Many judges have indeed been in full sympathy with the above, without feeling able to clear away the rubbish. In various states the simpler rule has been enacted by statute. In the absence of statute, there are cases holding that other limiting expressions may have the same effect as a "reservation of rights." In a few cases courts have suggested that a "release" can be "reformed" on the theory that a "reservations of rights" was omitted by mistake.
In some American cases the court has refused to give effect to an express "reservation of rights" in a document that is in plain terms a "release" of the one obligor. These courts, being rather literal-minded and unwilling to make conscious use of fiction, hold that a release is a "release" and is not turned into a "covenant not to sue" one obligor by the fact that there is a "reservation of rights" against others. In so holding the court is strictly logical; but it is also doing injustice, in conflict with long existing common law. (footnotes omitted) 4 Corbin, Contracts § 933.
Florida is in this latter category, despite dicta in Glidden Company v. Zuckerman, supra at 641, to the contrary:
The theory upon which a reservation of rights avoids the release of other comakers is that it is construed to be a covenant not to sue rather than a release. The attempted reservation of rights in the *272 case at bar falls short of meeting the necessary prerequisites to prevent the release of the defendants as comakers since it refers only to persons who are secondarily liable. (footnote omitted).
Penza v. Neckles, supra, clearly states that a release is a release and may not be converted to a covenant not to sue, even by an express reservation of rights.
We thus conclude that the "form" of the document may be controlling under Florida law, and therefore form may be dispositive of the present case. The specific rule which has evolved states that a release with reservation of rights does not constitute a covenant not to sue. The necessary inference is that a covenant not to sue assumes some other form, presumably a form which distinguishes it from all other instruments and contains no words of release or discharge or satisfaction. Before attempting to determine whether the form of the instrument under consideration may mandate a specific result, we briefly consider the problem from a slightly different perspective.
The interplay of two somewhat related principles appear to have generated the rule that the release of one obligor constitutes a release of all joint or joint and several obligors. First, regardless of the number of joint or several obligors, there is only the one, single obligation and its discharge or satisfaction, no matter what the form of the instrument evidencing such satisfaction or discharge, leaves nothing to be assigned or assumed, or indeed enforced in any way against any one. Second, if one of many joint and several obligors satisfies the entire obligation (or any portion greater than the amount for which he is liable as between or among his co-obligors) he is entitled to contribution from them and he may then proceed by subrogation to enforce the obligation against his co-obligors to the extent of their share of the liability as established by agreement, custom or law. It follows that if the obligation has been extinguished by operation of the first principle, then there is nothing left upon which the second principle, subrogation, can act. Since the obligee extinguished the obligation, defeating the subrogation rights of the joint and several obligors, he was not thereafter permitted to proceed against them. This rule, once created, was applied even where no actual right of contribution existed. All this suggests another seemingly simple test: if the obligee does not by his actions destroy the obligation then the other joint and several co-obligors ought not be released by reason of settlement with only one obligor for less than the full amount of the obligation. This brings us full circle to the instrument now before this Court for consideration.
It is undisputed that none of the parties to the settlement agreement intended the obligation to be discharged. There was a clear reservation of appellant's rights against appellees. The document in fact contemplated that Willits might have to make contribution in some amount to the other joint and several obligors as a result of any future recovery against them by appellant. These factors favor appellant's construction of the document as a covenant not to sue.
On the other hand, the settlement agreement specifically contemplated that at some point (and possibly before any judgment against or recovery from appellees) the litigation would be dismissed with prejudice as to Willits or that a complete satisfaction and general release would be given to Willits. In either event the obligation would have been extinguished. Additionally, the settlement agreement refers to release, as just indicated, and contains no language covenanting not to sue Willits. To this extent it is more consistent with appellees' theory. Faced with these same conflicts the trial court held, in pertinent part:
A) The Agreement is not a covenant not to sue. The matter was already in litigation when the Agreement was executed. A covenant not to sue recognizes that the obligation or liability continues.
B) The entire obligation as between Plaintiff and Defendants, WILLITS and WILLITS INTERNATIONAL was cancelled and discharged by the execution and completed performance of the Agreement. *273 WILLITS and WILLITS INTERNATIONAL were effectively released prior to trial.
C) As joint and several obligors, by reason of the above, Defendants, RICHARD SIEMENS and LICRON CORPORATION OF NEW YORK, have likewise been released.
We do not agree that a matter already in litigation may not, under appropriate circumstances, be subject to a covenant not to sue. However, there is substantial competent evidence in this record to support the factual finding that the agreement had been completely performed by Willits, which, in turn, supports the conclusion reached by the trial court that the entire original obligation had been cancelled and discharged so that Willits was effectively released prior to trial.
We find this to be in accordance with the state of Florida law prior to the 1980 amendment of Chapter 46, supra, however much we may incline to the opposite view.
We therefore affirm.
Because we perceive the possibility of a change in the judicial attitude in the area of commercial transactions (the legislature having expressed its intention that the rule be changed by enacting Section 46.015, Florida Statutes (1980)) and because we consider the issue to be one of great public importance, we again certify the following question in updated form to our Supreme Court:
Does a written release executed prior to June 23, 1980, of one joint and several obligor release all other joint and several obligors on the same obligation when the release expressly states that it is not the intention of the obligee to release any other joint and several obligor and when the release expressly reserves the right in the obligee to sue any and all other joint and several obligors?
AFFIRMED AND QUESTION CERTIFIED.
GLICKSTEIN, J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting:
Although I generally concur with the views expressed in Judge Hersey's well reasoned majority opinion, I do not agree with the conclusion that the document in question constituted an absolute release thereby effecting a complete discharge of all the obligors for the fees due the appellant for consulting services. The document could not itself have been a release since it specifically anticipated the possible execution of such a release in the future subsequent to the completion of any litigation between the appellant and the other obligors, the appellees here. The agreement also anticipated that Willits might be held liable to the other obligors for more than the $70,000.00 Willits agreed to pay to the appellant, and the agreement specifically provided that appellant would indemnify Willits should he be held liable to indemnify the other obligors for more than the $70,000.00. While the agreement does not neatly fit into the traditional form of a covenant not to sue, it is much more akin to such a covenant, as that term was interpreted by the Florida Supreme Court in Martin v. Burney, 160 Fla. 183, 34 So.2d 36 (1948), than a release. In Martin v. Burney there was a settlement agreement executed by the claimant with one of several defendants followed by a voluntary dismissal with prejudice but no actual release. A similar state of affairs is presented here although no dismissal with prejudice has been entered.
Under the law prevailing at the time the document in question was executed, a release executed in favor of one obligor operated to discharge the other obligors even when the release contained an express provision to the contrary. Penza v. Neckles, 344 So.2d 1282 (Fla. 1977). However, so long as no release has actually been executed, and the rights, if any of the co-obligors to seek contribution from their fellow obligors are left unimpaired, I think the agreement involved herein should be construed liberally to effect the intention of the parties and to avoid the harsh result which has now occurred. Under our holding obligors who are admittedly liable to *274 the appellant have been freed from any obligation to pay because the appellant has agreed with a co-obligor that under no circumstances, even if the appellant has to accept less than full payment on the obligation, shall the co-obligor have to pay more than $70,000.00. Unless we are compelled to reach this result we should not do so, especially since the appellees have been free to seek contribution from Willits and his company.
The legislature has now acted to avoid such harsh results by enacting Section 46.015, Florida Statutes (1980) which provides that a release of one joint obligor shall not affect the liability of another joint obligor. This comes too late to help the appellant, although in my view such legislative help is not necessary for the success of the appellant's claim here.