428 So.2d 225 (1983)
STEPHEN BODZO REALTY, INC., Petitioner,
v.
WILLITS INTERNATIONAL CORPORATION, Licron Corporation, John F. Willits and Richard Siemens, Respondents.
No. 61455.
Supreme Court of Florida.
January 27, 1983.
Rehearing Denied April 6, 1983.
Thompson & Gesch, West Palm Beach, and Larry Klein, West Palm Beach, for petitioner.
Slawson & Burman Law Offices, North Palm Beach, and Edna L. Caruso, West Palm Beach, for respondents.
EHRLICH, Justice.
This cause is before the Court to review a decision, Stephen Bodzo Realty, Inc. v. Willits International Corp., 405 So.2d 269 (Fla. 4th DCA 1981), which passed upon a question certified to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In April 1974 Stephen Bodzo Realty, Inc. (petitioner) and Willits International Corporation entered into an agreement whereby petitioner would render consulting services concerning a proposed real estate development in return for a fee of $342,000. This agreement was amended in August 1974 to *226 provide for a joint and several obligation for the fee on the part of Willits International Corporation and Licron Corporation. Payment was personally guaranteed by Richard Siemens, president of Licron and John Willits, president of Willits.
The respondents subsequently defaulted on the agreement and in 1975 petitioner brought suit against the two corporations and their presidents, as joint and several obligors on the consulting service contract. Petitioner demanded judgment for $267,000, the balance still owing after an initial payment of $75,000.
As noted by the district court of appeal below, the litigation proceeded in "straightforward fashion" until 1978 when petitioner entered into an agreement with Willits International Corporation and John Willits (hereafter referred to jointly as Willits) whereby, in exchange for $70,000, dismissal of their counterclaim, and cooperation with petitioner in the continued litigation against the other defendants, petitioner would dismiss its case against Willits.
When this agreement became known to them, the other defendants amended their answer, raising as an affirmative defense that the agreement was a release which released all joint and several obligors from any liability.
The trial court found that Licron and Siemens were initially liable for the fees set forth in the consulting services contract, and granted petitioner a partial summary judgment. That court ruled, however, that the effect of the agreement between petitioner and Willits must be determined at trial.[1] At the conclusion of the trial, final judgment was granted for the defendants, the trial judge determining that the agreement constituted a release that released all joint and several obligors, including Licron and Siemens.
On appeal, the district court noted that the legislature had abrogated the common law rule in Florida that a release of one or more joint obligors discharges the liability of any and all other joint and several obligors for instruments executed after June 23, 1980. § 46.015, Fla. Stat. (Supp. 1980).[2] However, since the agreement in the instant case was executed prior to that date, the district court affirmed based on Florida law prior to the adoption of section 46.015. The court found Penza v. Neckles, 344 So.2d 1282 (Fla. 1977), to be controlling, "however much we may incline to the opposite view." 405 So.2d at 273. Because the legislature had expressed its intention to change the rule by enacting section 46.015, however, the court believed there may have been a change in the law and certified the following *227 question as one of great public importance:
Does a written release executed prior to June 23, 1980, of one joint and several obligor release all other joint and several obligors on the same obligation when the release expressly states that it is not the intention of the obligee to release any other joint and several obligor and when the release expressly reserves the right in the obligee to sue any and all other joint and several obligors?
405 So.2d at 273. We answer the question in the negative.[3]
The instant case gives this court the opportunity to re-examine the rule in Penza. In that case the petitioner recovered a judgment against the respondents, who were joint and several obligors. After entry of the final judgment, petitioner Penza executed and delivered an instrument to one of the respondents releasing him from any obligation on the judgment in exchange for $2,500. The instrument specifically provided that the other respondent was not released in any way. 344 So.2d at 1282-83. This Court, in response to a certified question from the same district court as in the instant case, continued to adhere to the common law, holding that a release of one joint and several obligor releases all others even when the release expressly states the intention not to release the others and reserves the right to sue any and all other obligors. 344 So.2d at 1283.
This is a harsh rule. Before June 1980, Florida was one of the very few states that still adhered to the early common law that the release of one joint and several obligor releases all others. 66 Am.Jur.2d Release § 35 (1973). The harsh effects of the rule become obvious when the facts of the instant case are examined. There is no dispute in this lawsuit over the fact that respondents Licron Corporation and Siemens owe petitioners the sum of $197,000. It is also undisputed that none of the parties to this agreement intended that Licron Corporation and Siemens be released from their obligation. To allow these respondents to escape this obligation by relying on a document executed by others who had no intention of releasing them is the epitome of manifest injustice. This Court has never hesitated to revisit the common law when it becomes an anachronism and ceases to serve the cause of justice. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); Gates v. Foley, 247 So.2d 40 (Fla. 1971); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), superseded by statute as stated in Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981); Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932); Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931). "[F]or us to blindly adhere to an erroneous rule, merely because it has been declared in recent earlier decision, tends to enshrine and perpetrate the dead error of yesterday... ." Therrell v. Reilly, 111 Fla. 805, 809, 151 So. 305, 306 (1932). Reconsideration of Penza has convinced this Court of the necessity in the instant case for correcting the "dead error" of that decision and to remedy an obvious injustice.
Further support for this view is evidenced by the fact that the legislature has expressed its dissatisfaction with the rule by its enactment of section 46.015, supra which abrogated the common law doctrine for documents executed after June 23, 1980. That date is not dispositive for this Court. In order to fulfill our responsibility to do justice between the instant parties, we now recede from Penza.
*228 Having answered the certified question in the negative, the judgment of the Fourth District Court of Appeal is hereby quashed and it is ordered that judgment shall be entered for the petitioner.
It is so ordered.
ADKINS, OVERTON and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion, with which ALDERMAN, C.J., concurs.
BOYD, Justice, dissenting.
In an attempt to achieve what it sees as a fair resolution of the dispute between the parties, the Court today abrogates a common law rule without any analysis of the reasons for the rule and without any discussion of the principles governing judicial modification of the common law as embodied in legal precedent.
Prior to the enactment of section 46.015, Florida Statutes (Supp. 1980), the longstanding rule in Florida was that the release of one of two or more joint and several obligors operated to release all joint and several obligors. This was so even where the release specifically reserved to the obligee the right to proceed against the remaining joint and several obligors. Penza v. Neckles, 344 So.2d 1282 (Fla. 1977).
The legislature has now abrogated this doctrine by the enactment of section 46.015. The statute, however, provided a specific date upon which the change of law took effect, thereby clearly indicating that the new law was not intended to apply retroactively. This legislative determination controls. We should not use the legislative abrogation as a basis for overruling precedent.
In Penza v. Neckles we indicated that any change in the rule should come from the legislature. We noted that the legislature had abrogated the doctrine that a release of one joint tortfeasor operates to release other joint tortfeasors, but held that the legislative intent was specific and only narrowly applicable: "It does not extend in any way to releases involving joint and several obligors." 344 So.2d at 1283.
This Court has traditionally been highly cautious concerning abrogation or modification of the common law. Section 2.01, Florida Statutes (1975), provides:
The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the 4th day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state.
Concerning the operation of section 2.01, we recently said:
As a general rule, that part of the common law codified by section 2.01 should be changed through legislative enactment and not by judicial decision. Only in very few instances and with great hesitation has this Court modified or abrogated any part of the common law enacted by section 2.01, and then only where there was a compelling need for change and the reason for the law no longer existed.
Raisen v. Raisen, 379 So.2d 352, 353-54 (Fla. 1979), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980). Since the legislature clearly indicated that its abrogation of the rule has prospective effect only, the question of judicial abrogation is governed by the same principles as would apply if the legislature had not acted. The legislative enactment is not authority for a judicial abrogation of the rule since, as we said in Raisen, this Court changes common law rules only where the need is compelling and the reason for the rule has ceased to exist. Thus we view our power to make such changes much more narrowly than we view the legislature's power to do so.
Petitioners have not demonstrated any compelling need for changing the rule, any more than there was at the time of Penza v. *229 Neckles. Nor have they shown that the reasons underlying the common-law rule have ceased to exist. Since the legislature explicitly provided that the new rule should apply only to releases executed after June 23, 1980, it is clear that the legislature intended that the old rule apply to releases executed before that date. Since under these circumstances the legislative determination should control, we should approve the decision of the district court of appeal. I therefore dissent.
ALDERMAN, C.J., concurs.
NOTES
[1] At the trial John Willits' deposition was read into the record. He testified that by signing the agreement, he intended to make a final settlement between himself and petitioner, but did not intend to release the other defendants. Petitioner's attorney testified that he was aware of the distinctions between a release and a covenant not to sue, but because suit had already been filed and because there could be problems in re-suing John Willits, who was an international traveler, he drafted this unique agreement instead of filing a nonsuit and drafting a covenant not to sue. Pursuant to this agreement Willits executed a confession of judgment which petitioner placed into escrow. The confession of judgment was returned to Willits when petitioner received the $70,000. Petitioner did not dismiss its case against Willits, but did agree to execute a general release at the conclusion of the litigation.
[2] 46.015 Release of parties. 

(1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.
(2) At trial, if any person shows the court that the plaintiff, or his legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
(3) The fact that a written release or covenant not to sue exists or the fact that any person has been dismissed because of such release or covenant not to sue shall not be made known to the jury.
(4) The provisions of this section shall apply only to written releases or covenants not to sue executed after June 23, 1980.
[3] The question certified to this Court in the instant case is almost identical to the one that was certified by the district court in Penza. The difference is that the language in the instant question limits its applicability to instruments executed before June 23, 1980. In addition, in Penza the instrument expressly provided that the other obligor was not to be released. In the instant case, the instrument clearly implies the intention of the parties thereto not to release the other obligors. Therefore the certified question does not precisely fit the facts herein, in that the intent not to release the other obligors was not expressed in the instrument, but is clearly implied therein. We nonetheless answer the question certified without drawing a distinction between express and implied intent in the releasing instrument.