Harold J. Crawford, J.
The fundamental question presented on this motion is whether a corporate officer (president) who makes a note on behalf of his corporation and also personally indorses that note is discharged from personal liability on the note by an agreement between the payee and the corporate maker, by its said president, which extends the corporate maker’s time to pay the note.
This is a motion pursuant to CPLR 3213 for summary judgment against defendants Interfina, Inc. and its president, Fredric J. Evans. On May 3, 1966 Interfina made and delivered to *658 plaintiff a promissory note in the sum of $52,000, signed by Fredrie J. Evans, as president of Interfina, and also personally indorsed by Fredrie J. Evans. The note was not paid on its due date, August 2, 1966, and thereafter, on August 3, 15 and 19, Interfina, by its president, entered into letter agreements with the plaintiff extending the time for payment of the note. Fredrie J. Evans signed the agreements, but only in his corporate capacity.
The sum of $19,500 is due on the note and as against defendant Interfina there is no question that summary judgment should be granted.
In opposition to the motion as against him, defendant Evans contends that the extension agreements, which were not signed by him in his personal capacity, as a matter of law discharged him from personal liability on the note because he did not personally consent to the extension.
Section 3-606 of the Uniform Commercial Code provides:
“ § 3-606. Impairment of Recourse or of Collateral.
“ (1) The holder discharges any party to the instrument to the extent that without such party’s consent the holder
“ (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person.” (Emphasis supplied.)
The code does not explicitly define the meaning of the term “consent”. However, the Official Comment to section 3-606 (McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code) states: “2. Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party’s right to claim his own discharge. ’ ’
The New York Annotations of section 3-606 (McKinney’s Cons. Laws of N. Y.) state, inter alia: “ Neither N.I.L., § 201(5), nor § 201(6), mentions consent or assent by a secondary party to the holder’s release of the principal debtor or the extension of the principal debtor’s time to pay as preventing the principal debtor’s discharge. Compare U.N.I.L., § 120(6). The Code’s phrase 1 without such party’s consent ’ may change the present law in this respect.”
On its face the code, annotations and the decisions construing section 3-606 do not answer the question posed on this motion. The pre-code cases, which certainly are not controlling, indicate that the courts of New York often considered assent or, in a few *659 cases, even knowledge, sufficient to prevent discharge of the indorser in this situation.
In the pre-code case of National Park Bank v. Koehler (204 N. Y. 174) the court explained the rationale which underlies the rule that an indorser is discharged by the maker’s agreement with the payee entered into without the indorser’s consent to extend the maker’s time to pay a note. The court said (pp. 179-180): “ It is a rule, long recognized, that an accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and that his assent to any change therein is essential to the continuance of his obligation. The reason of the rule is that his right must not be affected, upon the maturity of the indebtedness, to make payment and, by subrogation to the creditor’s place, to, at once, proceed against the principal debtor to enforce repayment. Therefore it is that any agreement of the creditor, which operates to extend the time of payment of the original debt and suspends the right to immediate action, is held to discharge the non-assenting indorser, or surety; as the law will presume injury to him thereby. The creditor may arrange with his debtor in any way, which does not result in effecting either of these results. He may take, as collateral to the old note, new security, or other notes, and, if time is not given to the debtor, the indorser, or surety, will not be discharged. To prevent such a result, the agreement must expressly reserve all the remedies of the creditor against the indorser, or surety; in which ease the latter will be in a position to pay immediately and, then, to proceed against the principal debtor. (As to the general rule, see Gahn v, Niemcewicz, 11 Wend. 312; Putnam v. Lewis, 8 Johns. 389; Taylor v. Allen, 36 Barb. 294; Myers v. Welles, 5 Hill, 463; Fellows v. Prentiss, 3 Den. 512; Place v. McIlvain, 38 N. Y. 96; Hubbard v. Gurney, 64 id. 457; Morgan v. Smith, 70 id. 537; Pomeroy v. Tanner, id. 547; Calvo v. Davies, 73 id. 211.) ” (Emphasis supplied.)
In Keeler v. Templeton (164 Misc. 113, 119) the court stated: ‘ ‘ Holding as we do that the extension was given for consideration and, therefore, valid; that it having been given without the defendants’ knowledge or consent, they were released as sureties; and that, it being a material alteration, also exonerated the defendants, judgment is awarded dismissing the complaint.” (Emphasis supplied.)
Similarly in Matter of Paskett (151 Misc. 416, 417), the court stated: “I find that the maker’s time to pay the original debt was extended and the holder’s right to enforce the old note was *660 postponed by an agreement binding upon the payee-holder without expressly reserving the latter’s right of recourse against the decedent-indorser and without the assent of such indorser. I, therefore, hold that the decedent was thereby discharged from her liability as indorser of the old note. (Neg. Inst. Law, § 201, subd. 6; National Park Bank v. Koehler, 204 N. Y. 174, 179; Place v. McIlvain, 38 id. 96, 99.) ” (Emphasis supplied.) (See, also, Negotiable Instruments Law, § 120.)
In the absence of a clear code definition of “ consent ”, this court is guided by the statement in Stearns, Suretyship (5th ed., § 6.13): “ Parties to a contract may always alter it by mutual agreement and this is as true of suretyship contract as others. Accordingly, if the creditor and principal modify their contract, and the surety consents thereto, he will not be discharged. Such consent need not be expressly given, but may be implied from the surrounding circumstances or from his conduct.” (Emphasis supplied.)
The court in Matter of Grottola (124 N. Y. S. 2d 85) was also guided by this principle. The court stated (p. 88): “ Thus the voluntary release or surrender of security by the creditor without the consent of the surety will discharge the latter to the extent of the value of the property so released. Stearns Law of Suretyship, Elder’s Revision, 5th Edition, § 6.46; Cohen v. Rossmoore, supra. If, however, the surety consents to a modification of the contract between the principal debtor and the creditor, he will not be discharged. Stearns Law of Suretyship, supra, § 6.13. The author states at page 129: ‘ Such consent-need not be expressly given, but may be implied from the surrounding circumstances or from his conduct. ’ Here the deceased endorser was the president and the principal stockholder of Ventura Acres, Inc., the maker of the note. Subsequent to the death of the accommodation endorser the executrix of his will, or her attorney, solicited and secured from the creditor the release of mortgage and satisfaction thereof in question. The Court holds that such act on the part of the endorser’s legal representative constituted a consent to the satisfaction of the mortgage held by the creditor as security for the loan in question. Vose v. Florida Railroad Co., supra; Stearns Law of Suretyship, supra.” (Emphasis supplied.)
The application of this principle to the present question mandates a holding that defendant Evans consented to the extension. As a matter of fact he applied for, negotiated, signed in his corporate capacity and received the agreements extending the time for payment. ■ While mere knowledge or acquiescence is *661 not, in and of itself, sufficient to prevent discharge, the defendant’s conduct here far exceeded these limits and under the special circumstances here presented, constituted consent.
Accordingly, the motion for summary judgment in the sum of $19,500 is granted as against both defendants.