UNITED STATES of America,
Plaintiff-Appellee,

v.

VAHLCO CORPORATION, et al., Defendants,

and

Frederick Henry Vahlsing, Jr.,
Defendant-Appellant.

No. 85–2629.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1986.

Frederick H. Vahlsing, Jr. pro se.

Linda M. Samuel, Atty., Dept. of Justice, Commercial Litigation Branch, Civil Div., Washington, D.C., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Janice Alperin, Atty., Washington, D.C., for plaintiff-appellee.

Before WISDOM, DAVIS, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

This appeal raises the question whether an "absolute and unconditional" guarantor of an indebtedness is discharged from his obligation to answer for the debt if the creditor and principal debtor alter its terms. The district court answered this question in the negative. We reverse and remand for further proceedings consistent with this opinion.

### I.

Frederick H. Vahlsing, Jr., at all times relevant for purposes of this appeal, was president of Vahlco Corporation ("Vahlco"). Late in 1973, Vahlco negotiated a $350,000 loan from the First National Bank of Seguin, Texas (the "Bank"). To obtain the loan on favorable terms, Vahlco sought a guaranty of the $350,000 loan from the Small Business Administration (the "SBA"). The SBA agreed to guarantee a $350,000 line of credit for Vahlco subject to several conditions. The SBA required that 1) Vahlco assign to the Bank certain contracts, 2) Frederick H. Vahlsing, Jr. guarantee any loan under the line of credit, and 3) any loan under the line of credit be secured by a first lien on Vahlco's inventory and accounts receivable.

On November 16, 1973, Vahlsing executed the following letter:

November 16, 1973

TO WHOM IT MAY CONCERN:

I, Frederick H. Vahlsing, Jr., Route 130, Mercer County, Robbinsville, New Jersey, hereby guaranty any and all indebtedness of Vahlco Corporation of Seguin, Texas to the First National Bank of Seguin, Seguin, Texas and/or United Stated [sic], Small Business Administration relative to a $350,000 Line of Credit given to Vahlco Corporation of Seguin, Texas.

Sincerely,

/s/ Frederick H. Vahlsing, Jr.

On December 10, 1973, Vahlco executed a note for a $350,000 line of credit with the First National Bank of Seguin. The note was secured by a first lien on Vahlco's accounts receivable and inventory and by certain contracts assigned by Vahlco to the Bank and was guaranteed by the SBA and Frederick H. Vahlsing, Jr. The initial maturity date for the loan was December 10, 1974—one year from the date of execution. At Vahlco's request, the Bank, with the SBA's approval, extended the note on two separate occasions. After the extensions, the note was scheduled to mature on January 15, 1976. Also at Vahlco's request, the Bank, with the approval of the SBA, subordinated its lien on $400,000 of accounts receivable securing the loan.[1]

Vahlco defaulted on the $350,000 note. Thereafter, the Bank sold and assigned the note to the SBA. On February 25, 1976, the SBA demanded payment from Vahlsing, but Vahlsing did not comply. On behalf of the SBA, the United States of America instituted an action on April 8, 1975, in the United States District Court for the Western District of Texas, against Vahlco on the note and against Frederick H. Vahlsing, Jr. to enforce his obligations under the guaranty agreement. The government's action also sought to recover on a $10,000 note executed by Vahlco. Magnum Machine and Tool Corporation ("Magnum"), a subsequent holder of certain collateral securing that $10,000 note was also a defendant in the action. The $10,000 note is not at issue in this case.

A trial on the matter was held in March of 1982. At the conclusion of the government's case and before the defendants were allowed to present evidence, the government requested and the district judge granted a directed verdict in favor of

the United States of America, and against Vahlco, Vahlsing, and Magnum. The judge issued a memorandum opinion and order on April 7, 1982, detailing the basis for his decision. With respect to Vahlsing the court held that he had executed an "absolute and unconditional" guaranty of Vahlco's $350,000 note and that he was therefore precluded as a matter of law from raising defenses based upon alterations of the terms of the guaranteed obligation. On June 6, 1982, the court entered judgment against Vahlco, Vahlsing, and Magnum.

Shortly after the district court directed a verdict in favor of the United States, Vahlsing filed for bankruptcy.[2] Thereafter only Vahlco and Magnum appealed the district court's judgment in favor of the United States. We affirmed the judgment against Vahlco and Magnum.[3] In August 1985, the United States Bankruptcy Court for the Southern District of Texas entered a judgment denying Vahlsing a discharge in bankruptcy.[4] Shortly thereafter, Vahlsing entered this appeal of the district court's judgment against him and in favor of the United States of America. On November 21, 1985, this Court entered an order allowing Vahlsing to prosecute this appeal.[5] Because the automatic stay provision of 11 U.S.C. § 362(a) tolled the time limit within which Vahlsing was required to appeal, we ruled that Vahlsing's appeal of the district court judgment three years after it was entered was not untimely. We now consider Vahlsing's claims of error.

## II.

■ At the outset Vahlsing contends that the letter he executed on November 16, 1973, is not and was never an enforceable guaranty with respect to the $350,000 note. We find this contention wholly with-

---

1. Vahlsing also alleges that the SBA allowed Vahlco to assign to Occidental Petroleum Corporation the proceeds of certain contracts that secured the note.

2. *In re Frederick H. Vahlsing, Jr.,* Bankr. No. 00887–B–4 (S.D.Tex. filed Mar. 29, 1982).

3. *United States v. Vahlco Corporation,* 720 F.2d 885 (5th Cir.1983) (*Vahlco I*).

4. *Stanley v. Vahlsing,* No. 83–0154–B2 (Bankr.S. D.Tex. Aug. 12, 1985).

5. *United States v. Vahlco Corp.,* No. 85–2629 (5th Cir. Nov. 21, 1985) (*Vahlco II*).

out merit[6] and therefore move directly to his second contention. Vahlsing's second point of error is that the district court erred when it ruled that his guaranty was absolute and unconditional and that he was therefore precluded from raising any defenses based upon alleged alterations to the agreement guaranteed. We need not consider whether Vahlsing's guaranty is absolute and unconditional, because we hold that under Texas law[7] even if it is such a guaranty, Vahlsing may raise his defenses.

▬ A guaranty is an undertaking by the guarantor to answer for the payment of some debt or the performance of some contract of another person in the event of default. A guarantor under Texas law is a so-called favorite of the law and as such, a guaranty agreement is construed strictly in favor of the guarantor.[8] Any modification of the terms of the underlying contract discharges the guarantor's obligation. "If the creditor and the principal debtor vary in any degree the terms of the contract, then a new contract has been formed, upon which new contract the [guarantor] is not obligated and cannot, therefore, be bound."[9] The assumption underlying this rule is that the guarantor has carefully assessed the risk to which he will be exposed by undertaking the guaranty. If the terms of the guaranteed indebtedness are changed, the risks to the guarantor change as well, and it would be unfair to require the guarantor to assume risks other than those he chose to assume.[10]

▬ In an action to enforce a guaranty, the guarantor may assert as a defense that the terms of the guaranteed agreement have been altered materially.[11] Under Texas law, the guarantor of a note is discharged from his obligation to answer for that debt if the creditor grants an extension of time for the payment of the note to the principal debtor.[12] A guarantor is also discharged if a creditor unjustifiably impairs any collateral securing a note by allowing it to be subordinated or used for purposes other than fulfilling the terms of

6. Vahlsing does not contest that his letter of November 16, 1973, fails to meet the technical requirements necessary for a binding guaranty. Rather he contends that although the letter might be a guaranty, it does not guarantee the $350,000 note. Vahlsing points out that the letter, dated November 16, 1973, refers only to a "$350,000 Line of Credit given" and not to the particular note. A review of the four corners of the letter, *Schepps v. First Sec. Nat'l Bank of Beaumont,* 462 S.W.2d 341, 342 (Tex.Civ.App. 1970), leads to the unmistakeable conclusion that the letter is a guaranty of "any and all indebtedness ... relative to a $350,000 Line of Credit", and it is beyond doubt that the note at issue in this controversy is such an indebtedness. Moreover, if the letter were ambiguous, which it is not, the circumstances surrounding its execution would support our conclusion. *Cf. Southwest Savings Assoc. v. Dunagan,* 392 S.W.2d 761, 767 (Tex.Civ.App.1965).

7. This controversy concerns a note and guaranty executed by Texas parties in favor of a Texas bank. The rights and obligations of the parties to the note and guaranty are governed by Texas law. *See generally Vahlco I,* 720 F.2d 885 & 888 n. 5. That the note was later sold and assigned to the SBA does not alter this choice of law. Moreover, we are aware of no rule of federal law that would cause us to arrive at a result contrary to the one we reach. *See Victory Hwy. Village, Inc. v. Weaver,* 634 F.2d 1099 (8th Cir.

1980) (difficult choice of law issue need not be addressed because no conflict between Minnesota and federal law concerning guaranties); *United States v. Southern Cycle Accessories, Inc.,* 567 F.2d 296 (5th Cir.1978) (difficult choice of law issue need not be addressed because no conflict between Louisiana and federal law concerning guaranties).

8. *Jarecki Mfg. Co. v. Hinds,* 295 S.W. 274, 275 (Tex.Civ.App.1927); accord *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428, 430 (Tex.1971).

9. *Jarecki,* 295 S.W. at 275; *accord McKnight,* 463 S.W.2d at 430.

10. *See also Tomlin v. Ceres Corp.,* 507 F.2d 642, 646–47 (5th Cir.1975) (discussing two other theories of discharge due to alteration).

11. *McKnight,* 463 S.W.2d at 430 (change "in any material degree" leads to discharge).

12. See Tex.Bus. & Com.Code Ann. § 3.606(a)(1) (Vernon 1968); *Tomlin,* 507 F.2d at 646; White & Summers, *Uniform Commercial Code* § 13–14, at 524–25 (2d ed. 1980) (although 3.606 "does not expressly state that if the creditor grants an extension, the surety is discharged ... the draftsman intended that result"); *see also* Clark, *Suretyship in the Uniform Commercial Code,* 46 Tex.L.Rev. 453, 457 (1968).

the indebtedness guaranteed.[13] These defenses, based upon changes to the underlying obligation and therefore changes to the guaranty, are termed suretyship defenses. A suretyship defense is an affirmative defense, and the burden of proving a change rests on the guarantor.[14]

The district court found that Vahlsing's guaranty was absolute and unconditional, and as such precluded him from raising the suretyship defenses. The district court ruled that it did not matter that the Bank and the SBA had extended the maturity and impaired certain collateral because:

"[w]here a guaranty is absolute and unconditional, imposing on the guarantor an absolute obligation to make payment for the debt, action taken by SBA to extend the loan or to release collateral will not, as a matter of law, increase the risk to the guarantor. Accordingly, Vahlsing's defenses are insufficient as a matter of law and raise no issues that must be submitted to a jury...." [15]

The district court assumed that an absolute and unconditional guaranty of a debt is one under which the guarantor agrees to answer for the debt no matter how the creditor and principal debtor vary its terms. This, however, is a misperception of the distinction between an absolute and unconditional guaranty and one that is conditional.

The redundant term "absolute and unconditional" is an unfortunate choice of language, because it connotes more than it denotes. Under Texas law, a guaranty that is absolute and unconditional is one that requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor.[16] Such a guaranty is also called a "guaranty of payment".[17] A conditional guaranty, also termed a "guaranty of collection",[18] is one under which the creditor can seek performance from the guarantor only after the occurrence of some condition such as the condition that the creditor has unsuccessfully and with reasonable diligence sought to collect the debt from the principal debtor.[19] That a guaranty is conditional or unconditional has nothing to do with whether the guarantor waives asserting the suretyship defenses; the two are simply not related. The conditional or unconditional nature of a guaranty has to do only with whether there is a condition precedent to the creditor enforcing the guaranty against the guarantor.[20] An unconditional guarantor does not waive the right to be discharged if the creditor and principal debtor vary the terms of the underlying obligation. The suretyship defenses arise by operation of law, and absent an express waiver, even an absolute and unconditional guarantor may assert them.[21]

13. Tex.Bus. & Com.Code Ann. § 3.606(a)(2) (Vernon 1968); *Lawyers Title Insurance Corp. v. Northeast Texas Dev. Co.,* 635 S.W.2d 897, 899 (Tex.Ct.App.1982) (construing 3.606 and noting: "The release of a security interest in the collateral has been held to be an unjustifiable impairment unless the guarantors consent to such action.") Discharge as a result of collateral impairment is limited to the amount of collateral impaired. *Webb v. Finger Contract Supply Co.,* 447 S.W.2d 906, 907–08 (Tex.1969).

14. *Crimmins v. Lowry,* 691 S.W.2d 582, 585 (Tex.1985).

15. Slip at 19 (citations omitted).

16. *McGhee v. Wynnewood State Bank,* 297 S.W.2d 876, 883 (Tex.Civ.App.1956); *Estes v. Oilfield Salvage Co.,* 284 S.W.2d 201, 204 (Tex.Civ. App.1955); *see also* Tex Bus. & Com.Code Annot. § 3.416(a) (Vernon 1968).

17. 27 Tex.Jur.2d Guaranty § 6, at 283.

18. *Id.* at 284.

19. Tex.Bus. & Com.Code Ann. 3.416(b); 27 Tex. Jur.2d Guaranty § 6, at 282.

20. *See* Clark, 46 Tex.L.Rev. at 456; Conner, *Enforcing Commercial Guaranties in Texas: Vanishing Limitations, Remaining Questions,* 12 Tex. Tech.L.Rev. 785, 789–90 (1981).

21. *See Shepherd v. Eric Schuster Corp.,* 424 S.W.2d 693, 696–97 (Tex.Civ.App.1968), holding that the guaranty at issue was absolute, and then citing with approval the rule that a guarantor's obligation is discharged if creditor and principal debtor vary terms of guaranteed obligation. *See* Conner, 12 Tex.Tech.L.Rev. at 838, discussing the suretyship defense based upon impairment of collateral and stating: "[I]t appears proper to conclude that a guarantor giving

In ruling that the absolute nature of his guaranty precluded Vahlsing from raising the suretyship defenses, the court relied on a number of cases involving personal guaranties of SBA loans in which the SBA had extended the maturity of the loan or impaired collateral securing the loan.[22] The district court noted that in each of those cases the guaranty was absolute and unconditional and in each case the guarantor was precluded from raising defenses based upon the SBA extending the maturity date or impairing collateral. All of those cases, however, have a common denominator not found in the instant case. In each of those cases the guarantor *expressly* waived any defenses arising from extensions or impairment of collateral.[23] The guaranty executed by Vahlsing contains no express waiver, and we refuse to imply such a waiver.[24]

■ We therefore remand this case to the district court to allow Vahlsing to present his defenses.[25] On remand, the district court must bear in mind that Vahlsing did not guarantee a particular note or indebtedness, but rather "any and all in-

---

an absolute unconditional guaranty of payment does not *implicitly* waive all defenses based on collateral impairment. The fact that the guarantor may be used under such a guaranty without the creditor having first pursued the collateral does not suggest that the guarantor was disinterested in preserving its subrogation rights against collateral after being required to pay the principal obligation." (Emphasis in original). *Cf. D.W. Jaquays & Co. v. First Sec. Bank,* 101 Ariz. 301, 419 P.2d 85 (1966) (en banc), holding that an unconditional guarantor is not precluded from asserting a defense based upon impairment of collateral. Although the last two sources cited involved the suretyship defense based upon impairment of collateral, logic dictates the same result for the suretyship defense based upon an extension of time.

In *Estes v. Continental Bank & Trust Co.,* 421 S.W.2d 158 (Tex.Civ.App.1967), a Texas court refused to allow an absolute and unconditional guarantor to raise the suretyship defense based upon impairment of collateral. In *Estes,* however, the guaranty contained an express waiver of that suretyship defense. *Id.* at 162. We have no reason to believe that the court would have prevented the assertion of the suretyship defense absent the express waiver.

**22.** *See United States v. Southern Cycle Accessories, Inc.,* 567 F.2d 296 (5th Cir.1978); *United States v. Proctor,* 504 F.2d 954 (5th Cir.1974); *United States v. Flasher Co. of Tex.,* 460 F.Supp. 231 (S.D.Tex.1977); *United States v. Dubrin,* 373 F.Supp. 1123 (W.D.Tex.1974); *see also United States v. Cain,* 736 F.2d 1195 (7th Cir.1984); *United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d 673, 677 (10th Cir.1964); *United States v. Houff,* 202 F.Supp. 471 (W.D.Va.), *aff'd,* 312 F.2d 6 (4th Cir.1962).

**23.** See *Cain,* 736 F.2d at 1196 ("guaranty ... expressly empowered the SBA ... to consent to a total release of the security without notice to [guarantors]"); *Southern Cycle Accessories, Inc.,* 567 F.2d at 297 ("Appellant expressly agreed that the release of collateral would not affect her liability."); *Proctor,* 504 F.2d at 957 & n. 3

(guaranty agreement contained a "clear waiver of any right to preservation of the collateral" and court noted that this waiver was the key to its decision); *Newton Livestock Auction Market, Inc.,* 336 F.2d at 677 ("By the terms of the guaranty contracts SBA could have made an entire release of the security for the loan and still have recovered from the guarantors."); *Flasher Co. of Tex.,* 460 F.Supp. at 233 (guaranty agreement granted SBA "full power in its uncontrolled discretion and without notice to [the guarantor] to deal in any manner with ... the collateral, including [the power] to consent to the substitution, exchange, or release of all or any part of the collateral"); *Dubrin,* 373 F.Supp. at 1127 (guaranty expressly empowered SBA "to grant any extension or renewal [and] to consent to the substitution, exchange, or release of all or any part of the collateral" without notice to the guarantor); *Houff,* 202 F.Supp. at 477 (guaranty instrument provided that "rights of Bank in the collateral shall not be released, discharged or in any way affected ... by reason of ... any deterioration, waste, or loss ... of any of the collateral").

**24.** *See McKnight,* 463 S.W.2d at 430 ("guaranty may not be extended by construction or implication beyond [its] precise terms").

**25.** If an absolute and unconditional guaranty were one under which the guarantor waived the suretyship defenses, we would have to find that the Vahlsing guaranty is not absolute and unconditional. His letter of November 16, 1973 is simple and straightforward; it contains no waiver, express or implied, of the suretyship defenses. Vahlsing did not agree to guarantee all of Vahlco's indebtedness but rather its indebtedness relative to the $350,000 line of credit. Any indebtedness not within the terms of the line of credit is not covered by his guaranty.

debtedness of Vahlco ... relative to a $350,000 Line of Credit".[26] In deciding whether the terms of the agreement guaranteed by Vahlsing were altered materially, the court should look not to the terms of any particular note or indebtedness, but rather to the terms of the line of credit agreement itself. Changes may be made—such as granting extensions or subordinating collateral—to an indebtedness executed under the line of credit agreement without discharging Vahlsing if the changes are within the terms of the line of credit agreement. For instance, if the line of credit agreement is silent as to collateral, Vahlsing cannot complain that collateral securing a note executed under the agreement was subordinated. Only if the subordination of the collateral is at odds with a provision in the line of credit agreement will Vahlsing be discharged.

### III. Consent

The government contends that even if Vahlsing is allowed to assert the suretyship defenses, no jury question will be presented. Specifically, the government asserts that Vahlsing consented to the extensions and the impairment of collateral and therefore contends that his defenses are defective. In making this contention, the government relies on certain evidence presented at trial that would, if believed by a jury, tend to prove Vahlsing's consent. On the basis of this evidence, the government asks us to affirm the district court's directed verdict. We decline this invitation.

The government is correct in its assessment of Texas law with respect to consent by a guarantor. If a guarantor consents to an alteration of the guaranteed agreement, he thereby waives the right to assert any defense based upon that alteration. Such consent may be found in the express terms of the guaranty or may be given by the guarantor at the time of the alteration.[27] Consent given at the time of the alteration need not be in writing,[28] and indeed consent may be found in the guarantor's course of conduct.[29]

There is no question that Vahlsing's letter of guaranty does not expressly consent to these alterations. If Vahlsing consented to the changes such consent had to be

---

**26.** The government notes that Vahlsing guaranteed not the particular note that was changed but rather "any and all indebtedness ... relative to a $350,000 Line of Credit", and asserts that because the note continued to be "indebtedness relative to a $350,000 Line of Credit" after the extensions and impairment of collateral, Vahlsing is precluded as a matter of law from claiming that these actions discharge his obligation. This position is spurious, however, because Vahlsing insists that the changes made by the Bank and the SBA were at odds not only with the terms of the note, but also with the terms of the line of credit agreement he guaranteed. If it were undisputed that the changes to the note were within the terms of the line of credit agreement, the government's point would be well taken. That is not, however, the case.

That the guaranty at issue may be a continuing guaranty, does not alter our conclusion that Vahlsing may assert the suretyship defenses. *See McGhee,* 297 S.W.2d at 883, holding that a continuing guaranty is not confined to a particular transaction, but rather covers all transactions of a certain kind. Vahlsing's letter is a continuing guaranty only of indebtedness under the line of credit, and therefore, he is not required to answer for indebtedness that does not

comply with the terms of the line of credit agreement.

**27.** *C & G Coin Meter Supply Corp. v. First Nat'l Bank in Conroe,* 413 S.W.2d 151, 154 (Tex.Civ. App.1967). *See also* U.C.C. § 3.606, comment 2: "Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge." *Quoted in Lawyers Title Ins. Co.,* 635 S.W.2d at 899.

**28.** *C & G Coin Meter Supply Corp.,* 413 S.W.2d at 154.

**29.** *See* White & Summers, § 13–15, at 528: "The Surety's consent may also take the form of conduct which shows assent to the creditor's action." (citing *London Leasing Corp. v. Interfina, Inc.,* 53 Misc.2d 657, 279 N.Y.S.2d 209 (1967) (corporate officer who personally endorsed corporate note not discharged by alterations to note that he sought and negotiated in his corporate capacity)); *cf. Barclay v. Waxahachie Bank & Trust Co.,* 568 S.W.2d 721 (Tex.Civ.App.1978) (discussing guarantor's course of conduct as affecting her rights and duties).

given by him personally at or about the time the alterations were made. The government points out that Vahlsing served as president of Vahlco, and the record reveals that Vahlsing had, either directly or indirectly, a substantial financial interest in Vahlco. At trial, one of the government's witnesses testified that Vahlsing was well aware of and was in fact consulted on at least one of the extensions.

While all of this may well be true, we cannot rule that Vahlsing did in fact consent to the changes. In considering the government's position, the appropriate standard is the same as that for a directed verdict. As we stated in *Boeing Co. v. Shipman*,[30] a verdict should be directly only where, when viewed in the light most favorable to the opposing party, "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the Court believes that reasonable men could not arrive at a contrary verdict." [31]

■■■■ The record contains strong evidence pointing to the conclusion that Vahlsing did in fact consent to the changes, but Vahlsing was precluded by the district court's directed verdict from putting on his own evidence to rebut the evidence presented by the government. We cannot say, given the incomplete nature of the record, that the facts and inferences when construed in the light most favorable to Vahlsing point so strongly in favor of the government that reasonable men could not arrive at a contrary verdict.

We therefore reverse and remand this case to the district court to determine what the terms of the line of credit agreement Vahlsing guaranteed were, whether the actions of the Bank and the SBA materially altered the terms of that agreement, and, if so, whether Vahlsing consented to those changes.

---

**30.** 411 F.2d 365 (5th Cir.1969) (en banc).