In re CORNER POCKETS OF AMERICA, INC. d/b/a Corner Pocket, Doc & Eddy's, Nine Ball, Inc., Break–M–Up, Inc.,

George Frank, Judy K. Frank,

Corner Pockets of Ashwaubenon, Inc. d/b/a Doc & Eddy's,

Triangle Management of Nevada, Inc. d/b/a Corner Pocket, Doc & Eddy's, CPSW, Inc.,

Triangle Management Corporation d/b/a Corner Pocket, Doc & Eddy's, Boss Commercial Construction,

F & F Partnership d/b/a Corner Pocket, Doc & Eddy's,

Corner Pockets of the Southwest, Inc. d/b/a Corner Pocket, Doc & Eddy's,

F & F Corporation d/b/a Corner Pocket, Doc & Eddy's,

Corner Pockets of Wisconsin, Inc. d/b/a Doc & Eddy's, Corner Pockets of Wisconsin Rapids,

Corner Pockets of Janesville, Inc. d/b/a Doc & Eddy's, Corner Pocket, Debtors.

Bankruptcy Nos. 87–40653, 88–40279, 87–40483, 87–40648, 87–40649, 87–40653, 87–40684, 87–40889.

United States Bankruptcy Court, D. Montana.

Aug. 22, 1988.

Harry D. Dixon, Jr., Jeffrey T. Wenger, Dixon & Dixon, P.C., Omaha, Neb., Philip R. Oliver, Dennis Paxinos, Billings, Mont., for debtor.

Ira Eakin, Billings, Mont., for Bank.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 22nd day of August, 1988.

On November 13, 1987, the Bank of Norfolk filed a Motion for Determination of Secured Status. On December 21, 1987, the Debtors submitted a Memorandum In Support Of Debtors' Argument that it has been released from any obligation owing to the Bank of Norfolk by operation of U.C.C. § 3–606. The Bank of Norfolk did not filed a response.

After review of the record this Court finds the following facts to be true:

(1) On June 3, 1985, the Franks and Nine Ball, Inc. borrowed $204,000.00 from the Bank of Norfolk (Bank), and executed a promissory note payable to the Bank. Nine Ball, Inc. also granted the Bank a security interest in its equipment, inventory, accounts, and general intangibles, which was signed by George Frank as President. On the same day, Corner Pockets of America, Inc. (CPA) and Nine Ball, Inc. executed unconditional guaranties for this note and any further obligations between these parties. These guaranties were also signed by George Frank as President.

(2) On December 1, 1985, a new promissory note for $204,000.00 was executed solely by the Franks. Nine Ball, Inc. was not a party to this note. The note was characterized as a renewal and stated it was secured by making reference to the guaranties, the security agreement, and financing statement governing the first note. The proceeds of this second note were used to pay off the indebtedness owed by the Franks and Nine Ball, Inc. on the first note. The Franks defaulted on the second note, and it is the status of this claim that is now at issue. Nine Ball, Inc. was merged into CPA in 1987.

Based on these facts, the Debtors contend that the execution of the second note had the effect of extending the time of repayment for the Franks first obligation and thereby released such obligation of the guarantors through the operation of Nebraska U.C.C. § 3–606(1) and Mont.Code Ann. § 30–3–606(1), both being provisions of the Uniform Commercial Code. Mont. Code Ann. § 30–3–606(1) provides, in pertinent part:

"The holder discharges any party to the instrument to the extent that without such party's consent the holder:

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person ..."

The Debtors rely on *U.S. v. Vahlco*, 800 F.2d 462 (5th Cir.1986), in support of their position that U.C.C. § 3–606 applies to release the obligation of a guarantor when an extension is granted to the principal Debtor without the consent of the guarantor. Although the *Vahlco* case is proper authority for this position, the issue of whether the guarantors were actually entitled to be released under the facts in that case was not ultimately reached by the appellate court. Rather, the Court remanded the case to determine if the guarantor had consented to the extension, either at the time of the extension or through the express terms of the guaranty. The Court stated that if a guarantor consents to an alteration of the guaranty agreement, the guarantor waives the right to assert any defense based upon the alteration. *Id.* at 468.

Thus, the question in the instant case is whether or not the Debtors consented to the renewal of the first note. One method of determining if the guarantors consented is by looking at the language of the guaranty agreement. In the guaranty agreement at issue, the seventh provision gives the Bank the express authority to grant any one or more extensions or renewals without notice or approval of the guarantor.

In *Old National Bank of Washington v. Seattle Smashers Corp.*, 36 Wash.App. 688, 676 P.2d 1034 (1984), similar language was construed as equivalent to consent. The Court held that guarantors of a loan of the corporation were not relieved of liability on the promissory note by their revocation of the continuing guaranty agreement, and the Bank's subsequent extension of the note, where the guaranty agreement gave the Bank the right to renew or extend payment of such obligations without notice or consent of the guarantors and the guarantors promised to pay all loans as well as renewals of any loans, discounts or advances. The Court stated that although extending the time of payment on a loan without the consent of the surety operates to discharge the surety, the guarantor is not released if he consents to an extension of time.

This Court is in agreement with the above interpretation and thus finds that through the language of the guaranty agreement, the Debtors waived their right to assert the defense of U.C.C. § 3–606.

This Court's conclusion is further buttressed by the reasoning of *In re Pubs*, 618 F.2d 432 (7th Cir.1980), where the Court held that a bankrupt corporation was estopped from denying the validity of a bank's security interest. In that case, the bank lent money to parties who were then, or who were to become, directors, officers and sole shareholders of Pubs, the bankrupt corporation. The parties used the

money to buy equipment. However, before the promissory note was signed giving the bank a security interest in the equipment, the Debtors transferred the equipment to the bankrupt corporation. The Seventh Circuit held that even though the Debtors did not have rights in the collateral where the security interest was given, they were estopped from changing the validity of the bank's security interest since the bill of sale expressly stated that the collateral was transferred subject to a security interest in favor of the bank.

In the instant case, the renewal note specifically refers to the security interest granted by Nine Ball, Inc. in the first note. Thus, Debtors are estopped from denying validity of a bank's security interest since, by the language of the extension, the parties obviously intended the security interest to continue upon renewal.

Based on the above authority, this Court finds that the Bank of Norfolk's secured status has not been defeated. Accordingly,

IT IS ORDERED that the Bank of Norfolk be treated as a secured party for purposes of Debtors' Chapter 11 Plan.