**Marilyn McGHEE, Appellant,**

v.

**FIRST STATE BANK AND TRUST COMPANY OF MANCHESTER, KENTUCKY, Appellee.**

**No. 89–CA–245–MR.**

Court of Appeals of Kentucky.

June 29, 1990.

Rehearing Denied Aug. 17, 1990.

Stephan Charles, Manchester, for appellant.

John M. Lang, Tamara J. Patrick, Reece, Lang & Breeding, P.S.C., London, for appellee.

Before GUDGEL, McDONALD and WILHOIT, JJ.

WILHOIT, Judge.

On October 12, 1983, the appellant, Marilyn Emmons McGhee, signed a $6,000 promissory note payable to the appellee, First State Bank of Manchester, Kentucky. There is no question that Ms. McGhee signed the note solely to accommodate Leslie Hensley who received the proceeds of the loan and who was unable to borrow any sums from the bank without an accommo-dation endorser. The note, which bore an interest rate of 12½ percent, came due on April 9, 1984. Hensley did not pay the note when due. Ms. McGhee paid the interest on the note and it was renewed for another six months. When the note became due again Hensley paid the accrued interest due and the note was renewed a second time for an additional thirteen months, that is, until November 1985. The original note was marked "extended" and a new note with a higher interest rate was executed. Ms. McGhee did not sign the renewal note.

Hensley did not pay the renewal note, and the bank instituted legal proceedings against Hensley and Ms. McGhee in April 1986. A default judgment was obtained against Hensley who in April 1987 filed a petition in bankruptcy court seeking protection from his creditors. The bank's case against Ms. McGhee proceeded to trial where the court directed a verdict in favor of the bank. Judgment was entered against her in the sum of $9,472.18 which included the principal sum, interest, costs, and attorney fees.

■ Ms. McGhee argues that she was discharged by operation of law from any liability to the bank by provisions of Article 3 of the Uniform Commercial Code. Specifically she relies on KRS 355.3–606(1)(a) which states as follows:

> The holder discharges any party to the instrument to the extent that *without such party's consent* the holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse *or agrees to suspend the right to enforce against such person the instrument or collateral* or otherwise discharges such person....

(Emphasis added.)

The bank argues that the defense provided to a surety by this code provision is not applicable because the evidence clearly established that the bank "had no intention of releasing any party to this note, or agreeing not to sue any person against whom they had a right of recourse." Re-

gardless of the bank's intent, however, by renewal of the note the bank "suspend[ed] the right to enforce" the instrument as contemplated by the statute. *Nunnelley v. Herndon*, Ky.App., 685 S.W.2d 206 (1985); *see also* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky*, § 3.3(F)(1) (1983 & Supp.1987); J. White and R. Summers, *Uniform Commercial Code* §§ 13–16 and 13–17 (3rd ed. 1988) [hereinafter White & Summers].

■ Nevertheless, under the statute Ms. McGhee would still be liable on the note if she consented to the renewal. Consent to renewal may be given in advance and usually is contained in the original instrument, or it may be given afterward. Consent to renewal requires no consideration and operates as a waiver of the consenting party's right to claim discharge. *See* Official Comment to KRS 355.3–606. There is no requirement that consent to renewal be made in writing. Consent may "take the form of conduct which shows assent to the creditor's action." White & Summers, *supra*, 13–17 at 591. *See also United States v. Vahlco Corp.*, 800 F.2d 462 (5th Cir.1986).

■ An examination of the instrument itself reveals the following provision pertaining to consent:

Obligations Independent—I understand that my obligation to pay this note is independent of the obligation of any other person who has also agreed to pay it. You may release any of us, release any security, waive any right you might have against any of us, extend new credit to any of us, *renew this note*, or all of the above, without affecting my obligation to pay the loan amount.

(Emphasis added.)

Inasmuch as the provision contains a consent to "renew this note," we then must determine whether this language is to be interpreted as consent only to one or more than one renewal. KRS 355.3–118(6) states that "[u]nless otherwise specified consent to extension authorizes a single extension for not longer than the original period." We conclude that this language plainly is a consent to one renewal but consent to no

further renewal is specified. Our conclusion would be otherwise if the language specified consent to "any renewals" or simply to "renewals."

■ Nevertheless, we conclude that there was sufficient evidence concerning the appellant's conduct to create a jury question as to whether she consented to the 13–month renewal. The bank official with whom the appellant dealt testified that the appellant "asked that I give Leslie [Hensley] an additional period of time after the second renewal," and that he "agreed with her [the appellant] that Leslie would be allowed to renew the note for one more time and ... that period would be a 13 monthly [sic] renewal instead of the original six month." There was also evidence of a letter sent by the bank official to the appellant following the meeting at which she allegedly requested the renewal of the note but before the final renewal in which the banker sought to confirm "what I thought to be our understanding." The letter outlined the banker's understanding of the agreement between him and the appellant and requested that she contact him "if this is not your understanding of the agreement." If this evidence were believed, a jury could find that the appellant was not only aware of the 13–month renewal and acquiesced in it but that she actively took part in obtaining the renewal in the hope that the maker, or if necessary she, would be in a better position to satisfy the debt.

The judgment of the Clay Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

GUDGEL, J., concurs.

McDONALD, J., dissents.

McDONALD, Judge, dissenting.

I dissent from the majority opinion in one basic aspect. The majority alludes to substantial evidence in the record "which a fact finder could infer that Ms. McGhee had consented to additional renewals after the time the note was executed." It is my conclusion that not only is there a lack of

substantial evidence in this regard, there is no evidence at all of Ms. McGhee's consent beyond the one renewal permitted in the note and agreement.

It is my opinion that the trial court erred by its failure to direct a verdict for Ms. McGhee, and the majority's solution to the issue only compounds the error.

Pertinent to the issue of consent is KRS 355.3–118(6) which provides: "Unless otherwise specified consent to extension authorizes a *single* extension for not longer than the original period." (Emphasis added.) An additional but critical factor in my analysis of this issue is the principle set forth in *Coombs v. Beneficial Finance Co.,* Ky.App., 549 S.W.2d 327 (1977), that the bank, as the preparer of the note, "must therefore be bound *strictly* by the language thereof." (Emphasis added.) Keeping the statute and case law in mind, with having reviewed the transcript of the trial, I conclude there is no evidence that Ms. McGhee ever consented to the extensions beyond the first one. In fact, Ms. McGhee was coerced to pay the interest up to date by Harvey Hensley. Hensley, the bank's president, was in a bind because the principal obligor of the loan was his first cousin, Leslie Hensley. With the loan in a default condition and the federal auditors scheduled to arrive for inspection, it was critically necessary that the interest be paid to date upon the note for which Ms. McGhee acquiesced. This transaction renewed the note for an additional six months, the one and only consented-to renewal.

Concerning the additional extension, Harvey Hensley testified that although Leslie Hensley signed a new note, numerous attempts to get Ms. McGhee to sign a second note were unsuccessful. She refused on every occasion. From this scenario, the majority infers that Ms. McGhee gave her consent to the other extension.

It is beyond my grasp as to why the case is any longer legally maintainable against Ms. McGhee. It is my opinion that the case should be remanded to the trial court with directions to enter a judgment dismissing the bank's complaint against Ms. McGhee.