**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 19, 2012

No. 11-10154

Lyle W. Cayce
Clerk

RODNEY O. HAGGARD,

Plaintiff-Appellant

v.

BANK OF THE OZARKS INC.,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before BENAVIDES and PRADO, Circuit Judges, and ALVAREZ, District Judge.[*]

PER CURIAM:

This appeal is from the grant of summary judgment in a diversity case in which the Plaintiff-Appellant is a limited partner in a partnership that received a loan from the Defendant-Appellee Bank. The dispute stems from a limited guaranty agreement between the Bank and the Plaintiff-Appellant, who became a guarantor of the loan received by the partnership. The parties agree that the guarantor's liability is limited to $500,000, and not the full liability of the loan, which originally was $1.6 million. The central issue is whether the guaranty

---

[*] District Judge of the Southern District of Texas, sitting by designation.

No. 11-10154

agreement only requires payment from the guarantor once the balance of the outstanding loan is $500,000 or less.  The district court ruled that the payment was immediately due regardless of whether the balance of the loan had been reduced to $500,000.  Because we find the language of the guaranty agreement ambiguous, we VACATE the summary judgment and REMAND to the district court.  Further, we AFFIRM the district court's denial of the motion for leave to file a supplemental claim.  Finally, we VACATE the order awarding attorney's fees.

## I.     BACKGROUND

In 2007, Defendant-Appellee, Bank of the Ozarks, Inc. ("the Bank"), loaned McKinney Meadows L.P. ("the Partnership") $1,600,000 to purchase a tract of real property in McKinney, Texas.  The Partnership executed a promissory note payable to the Bank and also granted the Bank a lien on the acquired property.  During this same transaction, Plaintiff-Appellant Rodney Haggard ("Haggard"), who was a limited partner in the Partnership, executed a limited guaranty agreement, which provided in part that:

> [T]he liability of the Guarantor hereunder is limited to the last to be repaid $500,000.00 of the principal balance of the loan and all accrued and unpaid interest thereon from time to time, it being understood that until the principal balance of the Loan is reduced to less than $500,000.00, there will be no reduction in the amount guaranteed hereunder and that the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00.

The agreement further provided that in the event of a default the Bank was not required to sue Haggard or the Partnership to enforce payment.  Nor was the Bank required to enforce its rights against any security prior to demanding payment from Haggard.

The Partnership defaulted on the note, and the Bank brought suit in the Eastern District.  That suit was dismissed when the parties entered into a

No. 11-10154

forbearance agreement, which provided that the forbearance period would expire on March 30, 2010.  On April 20, 2010, Haggard filed the instant suit, seeking a declaratory judgment that the Bank could not pursue him as the guarantor until the balance of the loan was reduced to $500,000.  The Bank counterclaimed for breach of the guaranty contract, seeking $500,000 in principal, plus interest accrued on the entire balance, attorney's fees, and costs.  The Bank also filed a third-party complaint against the Partnership for breach of the Note and indemnification.  Both the Bank and Haggard filed motions for summary judgment.

On January 4, 2011, the Bank foreclosed its lien on the real property that secured the loan.  The Bank secured its title to the property with a bid of $975,000.  Haggard had previously submitted to the district court an appraisal valuing the land at $2,300,000.  On January 5, the Bank filed a status report with the court, notifying it of the sale and asserting that the sale reduced the deficiency to $717,999.99.  On January 14, Haggard filed a motion for leave to file a first amended complaint to add a supplemental claim.  Haggard's supplemental claim was that under § 51.003 of the Texas Property Code, he was entitled to an offset against his liability equal to the difference between the fair market value of the property and the $975,000 from the foreclosure sale.[1]  That same day, the district court granted in part and denied in part Haggard's and the Bank's motions for summary judgment.  The court held that Haggard owed $500,000 in principal, and owed interest on that balance but did not owe interest on the entire principal balance of the loan, which the Bank had claimed.[2]  In its final judgment, the court certified the judgment as appealable under Federal Rule of Civil Procedure 54(b), finding there was no just reason for delay.  The

---

[1]  This claim was raised in the alternative in the event the district court denied his request for declaratory judgment.

[2]  The Bank does not appeal this ruling.

No. 11-10154

court also granted the Bank's request for attorney's fees and costs. On February 7, the court summarily denied Haggard's motion to file an amended complaint. Haggard now appeals.[3]

II.    ANALYSIS

A.    Standard of Review

This Court reviews summary judgment de novo, using the same standards as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is proper when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and all justifiable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

B.    Guaranty

Haggard contends that the district court erred by misconstruing the language of the guaranty agreement and concluding that he is immediately liable for $500,000. "A guaranty is an undertaking by the guarantor to answer for the payment of some debt . . . of another person in the event of default." *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir. 1986). To recover pursuant to the guaranty, the Bank must establish "proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.–Dallas, 1994, no writ). Here, the dispute is whether the terms of the guaranty agreement impose a condition that Haggard becomes liable as a guarantor only after the principal balance is

---

[3] The district court separately entered a default judgment against the Partnership as a third-party defendant.

No. 11-10154

reduced to $500,000. In other words, Haggard claims that the guaranty expressly limits his liability to the last $500,000 due on the loan.[4]

Pursuant to Texas law, a guarantor "is a so-called favorite of the law and as such, a guaranty agreement is construed strictly in favor of the guarantor." *Vahlco,* 800 F.2d at 465.[5] Further, "the primary concern of the reviewing court is to ascertain the intent of the parties." *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1320 (5th Cir. 1992). "If the guaranty is ambiguous, then the court must apply the 'construction which is most favorable to the guarantor.'" *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 n.1 (Tex. 1983)). "The starting point for analyzing the rights and duties of the parties to a guaranty should be the language of the instrument itself." *Federal Deposit Ins. Corp. v. Woolard*, 889 F.2d 1477, 1480 (5th Cir. 1989).

As previously set forth, the instant agreement, under the heading of "Guaranty of Obligation," provides in relevant part that:

> [T]he liability of the Guarantor hereunder is limited to the last to be repaid $500,000.00, of the principal balance of the Loan and all accrued and unpaid interest theron from time to time, it being understood that until the principal balance of the Loan is reduced to less than $500,000, there will be no reduction in the amount guaranteed hereunder and that the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00.

---

[4] "A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or a more limited liability is expressly set forth in the guaranty agreement." *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 110 (Tex.App.–Dallas, 1987, writ ref'd n.r.e.). Here, it is undisputed that Haggard's liability is limited to $500,000 and that his guaranty is not measured by the principal's full liability.

[5] The guaranty agreement expressly provides that it is to be governed by the "laws of the State of Texas."

Haggard relies on the above language, asserting that his liability is "limited to the last to be repaid $500,000.00, of the principal balance of the Loan."[6] Haggard points out that if he were to pay $500,000 prior to the balance being reduced to $500,000, according to the agreement, he would still be liable for any remaining balance under $500,000, because "the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00."

Texas courts have recognized "two distinct types of guaranty: a guaranty of collection (or conditional guaranty) and a guaranty of payment (or unconditional guaranty)." *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex.App.–Houston [14 Dist.], 1997, no pet.). "A guaranty of collection is an undertaking of the guarantor to pay *if* the debt cannot be collected from the primary obligor by the use of reasonable diligence." *Id.* (emphasis added). Generally, a guaranty of collection (or conditional guaranty) requires that the principal debtor be a party to the action seeking payment. *Id.* In contrast, a guaranty of payment (or unconditional guaranty) does not require as a condition precedent to its enforcement that the principal debtor be joined in the suit seeking payment because the guarantor is "akin to a co-maker in that the holder of the note can enforce it against either party." *Id.*

Relying upon certain language from paragraphs 4 and 5 of the guaranty agreement, the district court concluded that the guaranty was an unconditional one under Texas law. In relevant part, paragraph 4 provides that Haggard is not released from his obligation to pay based upon any neglect or failure of the Bank with respect to collecting the "guaranteed indebtedness" or foreclosing on the lien. Paragraph 5 provides that the Bank does not have to bring suit against

---

[6] It would appear from the summary judgment evidence presented in the district court that Haggard negotiated with the Bank to have this limiting language in his guaranty agreement.

the Partnership or foreclose on the lien in order to enforce payment by Haggard. The language in the provisions apparently falls into the unconditional or guaranty-of-payment category because the Bank does not have to first attempt to collect from the Partnership.

The district court rejected Haggard's claim largely because it determined that the guaranty was unconditional. However, our precedent indicates that even when a guaranty is unconditional, the reviewing court must look to the terms of the agreement to determine the obligation of the guarantor.[7] *Cf. Vahlco,* 800 F.2d at 466 (explaining that "absent an express waiver [in the guaranty agreement], even an absolute and unconditional guarantor may assert [affirmative defenses]").

More to the point, Haggard cites this Court's opinion in *NH Properties Limited Partnership v. Mittleider,* 267 F. App'x 375 (5th Cir. 2008) (unpublished). In that case, the guarantor had guaranteed payment of rent under a lease. Under the terms of the guaranty, Mittleider had guaranteed payment "by Tenant of rent in the amount of $1,236,180.00 due under the lease in the manner and at the time prescribed in the Lease, which is a portion of the rent is [sic] payable from the date hereof until February 1, 2006. . . ." *Id.* at 376. Mittleider claimed that the quoted language meant that he guaranteed *only* that the first $1,236,180.00 in rent would be paid during the prescribed period. Because more than $2,000,000 in rent had been paid, Mittleider asserted that he was not liable under the guaranty. This Court rejected Mittleider's claim, explaining as follows: "As the district court noted, the Guaranty did not specifically state that Mittleider 'guarantees *the first* $1,236,180.00 or '*only the first* $1,236,180.00 that becomes due' or similar language, though this would

---

[7] This Court has opined that the "redundant term 'absolute and unconditional' is an unfortunate choice of language, because it connotes more than it denotes." *Vahlco,* 800 F.2d at 466.

have been a simpler way of conveying the interpretation Mittleider advances." *Id.* (emphasis added). In contrast to *Mittleider*, in Haggard's guaranty, his liability was expressly "limited to the last to be repaid $500,000, of the principal balance of the loan." Further, the guaranty provided that Haggard's liability would "only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000." Reasoning by analogy, *Mittleider* provides support for Haggard's interpretation of the guaranty agreement.

On one hand, the district court and the Bank's interpretation does not give effect to the language that: (1) the guarantor's liability "is limited to the last to be repaid $500,000 of the principal balance of the loan"; and (2) "until the principal balance of the Loan is reduced to less than $500,000.00, there will be no reduction in the amount guaranteed hereunder and that the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00."[8] On the other hand, Haggard's contention that the balance of the loan must be reduced either by the Bank collecting or forgiving a portion of the loan is arguably in tension with the guaranty provisions that the Bank does not have to first seek payment from the Debtor or the collateral.

As previously set forth, a "guaranty agreement is construed strictly in favor of the guarantor." *Vahlco,* 800 F.2d at 465. "If the guaranty is ambiguous, then the court must apply the 'construction which is most favorable to the guarantor.'" *Resolution Trust Corp.*, 958 F.2d at 1320 (quoting *Coker*, 650 S.W.2d at 394 n.1). We conclude that the language of the guaranty agreement is open to different interpretations and thus ambiguous. Because the terms of

---

[8] The Bank responds that this language prevents Haggard from attempting to receive credit toward his $500,000 liability based on any principal payments made by the Partnership or another guarantor. We do not find the Bank's response persuasive because the language contains no reference to payments made by others.

No. 11-10154

the guaranty are ambiguous, the district court erred by accepting the Bank's interpretation and granting summary judgment. Accordingly, we VACATE the grant of summary judgment and REMAND to the district court.

C.    Denial of Motion to Amend Complaint

Haggard next contends that the district court erred in denying his motion for leave to file a supplemental complaint. This Court reviews the denial of a motion for leave to file a supplemental complaint for abuse of discretion. *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). "Under Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Id.*

Haggard's supplemental claim is that under § 51.003 of the Texas Property Code, he is entitled to an offset against his liability equal to the difference between the fair market value of the property and the $975,000 from the foreclosure sale.[9] It is undisputed that this set-off claim arose after the original complaint. Nonetheless, the Bank contends that because Haggard expressly waived any claim of set-off in the guaranty, allowing the claim to be filed would have been futile, and thus it was not an abuse of discretion to disallow the claim. The guaranty agreement provides that Haggard's obligation shall not be impaired or released, without written consent of the Bank, based on: "any defenses, set-offs or counterclaims which may be available to Borrower or any other person or entity." The Bank argues that Haggard therefore waived his

---

[9]    Section 51.003(c) provides that:

If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price.

set-off claim.   This Court has held that, under Texas law, a guarantor of mortgage debt could waive the statutory right to offset against his liability for deficiency, which was based on the difference between the fair market value of the mortgage property at the time of foreclosure and the foreclosure sales price. *LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 840-42  (5th Cir. 2002).  The case at bar involves the same section of the Texas Property Code, § 51.003, that was at issue in *Sleutal.*  We are unpersuaded by Haggard's attempts to distinguish *Sleutel* based on the difference in the wording of the waivers.  The language of Haggard's guaranty agreement clearly states that the guarantor relinquished any set-off claims unless the Bank gave written consent.  Thus, the district court did not abuse its discretion in denying leave to file a supplemental claim.[10]

### D.    Attorney's Fees and Costs

Haggard also contends that the district court erred in ruling that he was responsible for attorney's fees and costs.   Paragraph 15 of the guaranty agreement provides as follows:

> If Guarantor should breach or fail to perform any provision of this
> Guaranty, Guarantor agrees to pay to Lender all reasonable
> costs and expenses (including court costs and reasonable
> attorneys' fees to the extent enforceable under the laws of
> the State of Texas) incurred by Lender in the enforcement hereof.

Thus, pursuant to the terms of the agreement, if Haggard breached the guaranty agreement, he agreed to pay reasonable attorney's fees and costs. However, as set forth above, the district court erred in granting summary

---

[10] We note that the same set-off claim is pending before Judge Lynn in a separate suit. On November 10, 2011, Judge Lynn entered an order stating as follows:  "The Court finds that the Fifth Circuit's consideration of arguments in a related case may impact this case. Therefore, the Motions are GRANTED in part. The case is STAYED until May 10, 2012 subject to further motions to stay, and all unelapsed deadlines are cancelled." *Haggard v. Bank of the Ozarks*, No. 11-CV-601 (N.D. Tex. filed Mar. 23, 2011).

judgment on the Bank's claim that Haggard had breached the guaranty agreement. We therefore VACATE the award of attorney's fees and costs.

### III.   CONCLUSION

Accordingly, the district court's grant of summary judgment is VACATED and REMANDED for proceedings consistent with this opinion. Additionally, the order denying leave to file the supplemental claim is AFFIRMED, and the award of attorney's fees and costs is VACATED.