IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

GARY MCCALLA and DIANNE
MCCALLA,

       Appellants,

v.

E. C. KENYON CONSTRUCTION
COMPANY, INC., a dissolved
Florida corporation, DOUGLAS
HERRING, an Individual, and
TIMOTHY YOUNG, an Individual,

       Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-5225

Opinion filed January 15, 2016.

An appeal from the Circuit Court for Duval County.
Jack M. Schemer, Judge.

Peter A. Robertson, Erin Rohan Smith, William Douglas Stanford, Jr., and Randy
R. Cardoza, III of the Robertson Firm, St. Augustine, for Appellants.

S. Grier Wells of GrayRobinson, P.A., Jacksonville and Kristie Hatcher-Bolin,
Lakeland, for Appellees.


BENTON, J.

      Gary McCalla asks us to reverse summary final judgment entered in favor of

the contractor who built his house, E.C. Kenyon Construction Company, Inc.

(Kenyon), and two of Kenyon's principals, Douglas Herring and Timothy Young,

and send the case back. Concluding he is entitled to no less, we reverse and remand for further proceedings.

In a separate case filed earlier, No. 16-2008-CA-005588, Gary and his wife, the late Dianne McCalla, sued Kenyon for breach of the construction contract, breach of express and implied warranties, and violation of the Florida Deceptive and Unfair Trade Practices Act, and obtained a judgment against Kenyon for $627,657.48. Kenyon did not plead any offset as an affirmative defense in Case No. 16-2008-CA-005588. See Felgenhauer v. Bonds, 891 So. 2d 1043, 1045 (Fla. 2d DCA 2004) ("It is well settled in contract actions that set-off is an affirmative defense that must be pleaded or it is waived."). Kenyon did not, indeed, defend the original lawsuit at all.

In the present case, No. 16-2012-CA-004988, the McCallas allege that, before final judgment was entered against it in Case No. 16-2008-CA-005588, Kenyon transferred all or most of its assets to Messrs. Herring and Young (who knew of the McCallas' pending claims), without receiving reasonably equivalent value in exchange. The complaint in the present case thus alleged fraudulent transfers within the meaning of sections 726.105(1) and 726.106, Florida Statutes, which rendered Kenyon unable to satisfy the McCallas' judgment against it.

> A fraudulent conveyance action is an action by a creditor against a transferee directed against a particular transaction, which, if declared fraudulent, is set aside thus leaving the creditor free to pursue the asset, or it is

2

an action against a transferee who has received an asset by means of a fraudulent conveyance and should be required to either return the asset or pay for the asset (by way of a judgment and execution).

Gen. Elec. Co. v. Chuly Int'l, LLC, 118 So. 3d 325, 326 n.1 (Fla. 3d DCA 2013). "A fraudulent conveyance action is simply another creditors' remedy." Yusem v. S. Fla. Water Mgmt. Dist., 770 So. 2d 746, 749 (Fla. 4th DCA 2000) ("A fraudulent conveyance action, under section 726.108, is not an action against a debtor for failure to pay an amount owing from a prior judgment.").

In the order under review, the trial court concluded the McCallas were "not proper claimants" under section 726.108, Florida Statutes, "because such statutory provision does not provide for an award of money damages." We review this surprising legal conclusion de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Final orders entering summary judgment do not entail fact finding. When a defendant moves for summary judgment, "[t]he function of the court is solely to determine whether the appropriate record presented in support of summary judgment conclusively shows that the plaintiff cannot prove the claim alleged as a matter of law." Hervey v. Alfonso, 650 So. 2d 644, 646 (Fla. 2d DCA 1995). We apply "'the de novo standard of review to determine whether there are genuine issues of material fact and whether the trial court properly applied the correct rule of law.'" Glaze v. Worley, 157 So. 3d 552, 553-54 (Fla. 1st DCA 2015) (citation omitted).

3

The trial court erred in ruling that section 726.108 does not authorize awards of money damages. The statute authorizes such awards against both fraudulent transferor and transferee, jointly and severally. See Hansard Constr. Corp. v. Rite Aid of Fla., Inc., 783 So. 2d 307, 309 (Fla. 4th DCA 2001) (concluding "that a plaintiff may recover money damages against the transferor under the so-called catchall provision, section 726.108(1)(c)(3), of the Uniform Fraudulent Transfer Act" (boldface omitted)). Section 726.108, Florida Statutes, provides:

> (1)  In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain:
> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;
> (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> 1.  An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> 2.  Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> 3.  Any other relief the circumstances may require.
> (2)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Section 726.109(2), Florida Statutes, provides that "to the extent a transfer is voidable in an action by a creditor under s. 726.108(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or

4

the amount necessary to satisfy the creditor's claim, whichever is less." See Myers v. Brook, 708 So. 2d 607, 610 n.1 (Fla. 2d DCA 1998) (noting that "section 726.109(2)(a), Florida Statutes (1993) permits a money judgment to be entered against the first transferee of the fraudulently conveyed assets").

The trial court also ruled that the appellees were "entitled to a setoff of both the Amerisure Lawsuit credit of $158,558.17 and the undifferentiated Green[e] Lawsuit settlement of $550,000.00 from the Judgment of $627,657.48. . . . The total of the settlement amounts of $708,558.17 exceed the Judgment, thereby extinguishing the underlying obligation for the instant action for fraudulent transfer." See generally Cornerstone SMR, Inc. v. Bank of Am., N.A., 163 So. 3d 565, 568 (Fla. 4th DCA 2015) ("Whether the trial court awarded a proper set-off is a pure question of law reviewed de novo.").

On March 30, 2012, the McCallas had filed suit against Amerisure Insurance Company (Amerisure), Kenyon's certified general liability policy carrier, alleging Amerisure wrongfully denied coverage intended for their benefit. On October 29, 2012, the McCallas settled with Amerisure for $65,000.00. As part of the settlement, the McCallas agreed to credit and deduct the sum of $158,558.17 from the judgment entered in their favor against Kenyon in the original action, Case No. 16-2008-CA-005588. The learned trial judge ruled that this credit or offset should

5

inure to the benefit of Messrs. Herring and Young, no less than to Kenyon, and we have no occasion to revisit that ruling on this appeal.[1]

The trial court erred, however, in determining the appellees were entitled to set off the amount the McCallas received in settlement of malpractice claims they made against Christopher Greene, the first lawyer they retained to represent them in the original lawsuit against Kenyon, and his employers. The defendants in the professional malpractice action were never jointly and severally liable for the damages awarded in the original action against Kenyon. In Case No. 16-2008-CA-005588, Kenyon was adjudicated guilty of having damaged the McCallas long before the malpractice defendants ever entered the picture.

On February 9, 2011, before entry of the default judgment against Kenyon, the McCallas sued Mr. Greene and the two law firms who employed him while he represented them, alleging professional malpractice.[2] In June of 2013, the

---

[1] Mr. McCalla does not challenge the trial court's determination that the appellees are entitled to set off $158,558.17 against the judgment entered in Case No. 16-2008-CA-005588, pursuant to the terms of the settlement in the Amerisure action.

[2] "'[A] cause of action for legal malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of loss to the client.' The third element regarding the loss to the client is not satisfied unless the plaintiff demonstrates that there is an amount of damages which the client would have recovered but for the attorney's negligence.'" Massey v. David, 953 So. 2d 599, 603 (Fla. 1st DCA 2007) (quoting Sure Snap Corp. v Baena, 705 So. 2d 46, 48-49 (Fla. 3d DCA 1997) (emphasis omitted)).
In the malpractice action, McCalla claimed damages as a result of various

breaches of professional duty, including attorney's fees and costs paid for no tangible benefit; loss of the ability to access insurance coverage for most of the construction damages; loss of the ability to hold Kenyon responsible for the construction damage not covered by insurance; additional costs and expenses incurred for unresolved construction problems; and extended loss of use of the residence occasioned by the increased, unremediated construction damage.

Appellees plausibly assert that damages sought in Case No. 16-2008-CA-005588 may overlap with damages sought in the malpractice case. See generally, e.g., Osheroff v. Rauch Weaver Millsaps & Co., 882 So. 2d 503, 506 (Fla. 4th DCA 2004) ("[W]hile the damages recoverable by each cause of action [may be] overlapping, they are not necessarily co-extensive."). In a footnote in the answer brief, they argue: "While the McCallas insist their settlement in the Professional Negligence Case included attorney's fees paid by or owed to them, the General Release contained no allocation of the settlement sums. As such, the undifferentiated settlement cannot be apportioned among various elements of damages as they now claim. Nauman v. Eason, 572 So. 2d 982 (Fla. 1st DCA 1990)." (This is the extent of their argument on this "point.")

We acknowledge the rule, applicable in a case (unlike the present case) where offset is appropriate, that the contemporaneous intent of settling parties as expressed in the settlement agreement, should be given effect and

> that, in the absence of allocation by the settling parties at the time of settlement, the entire settlement should [be] offset against the damages awarded by the jury.

Nauman, 572 So. 2d at 983. See Dionese v. City of West Palm Beach, 500 So. 2d 1347 (Fla. 1987); see also Devlin v. McMannis, 231 So. 2d 194, 196 (Fla. 1970) ("[T]here may be occasions where a settlement is effected so as to fail to preserve or otherwise differentiate settlement sums pertaining to the damages distinctive and peculiar to the underlying causes of action. Under such circumstances, subsequent verdicts entered against another joint tort-feasor on the same causes of action may indeed occasion the necessity of offsetting against the total sum of the verdicts the total amount of the prior settlement. However, we need not explore such possibility under the present set of facts.").

By carving out the claims against the fraudulent transfer defendants in the present case, however, the settling parties allocated the entire settlement proceeds to counts not recovered on in Case No. 16-2008-CA-005588, and not, therefore, the subject of the fraudulent transfer case. See Moody v. Lawnwood Med. Ctr., Inc., 125 So. 3d 246, 249 (Fla. 4th DCA 2013) (holding settlement agreements with two defendants did not release a third defendant because "'the intention of the parties must be determined from examination of the whole contract'" and the

7

McCallas settled their malpractice action for $550,000, an amount they assert they expended some $300,000 to obtain. As part of the settlement agreement, the McCallas discharged Mr. Greene and both law firms from liability for all claims in law and equity. But they reserved the right to pursue any claims they had or might have against any entity not a party to the settlement agreement, including specifically claims against Kenyon, Mr. Herring, and Mr. Young in the pending fraudulent transfer case.

It is a gross oversimplification at best to say, as was said in <u>Blasland, Bouck & Lee, Inc. v. City of N. Miami</u>, 283 F.3d 1286, 1295 (11th Cir. 2002), that "the purpose of a setoff is to prevent a party from recovering twice for the same damages." <u>See</u> <u>Gouty v. Schnepel</u>, 795 So. 2d 959, 966 (Fla. 2001) (denying setoff where settling defendant was exonerated as joint tortfeasor even though doing so permitted the plaintiff to recover in the aggregate more than the jury awarded). In keeping with the majority view, as Justice Grimes explained in <u>Wells v. Tallahassee Memorial Regional Medical Center, Inc.</u>, 659 So. 2d 249, 251 (Fla. 1995), Florida law holds that settlement dollars paid "by one tortfeasor should only extinguish that tortfeasor's liability and have no effect on another tortfeasor's liability" in the absence of joint and several liability.

---

settlement agreements "'specifically reserve[d] all rights to pursue their claims against'" the third defendant) (citations omitted)).

While Case No. 16-2008-CA-005588 sounded in contract, joint and several liability is still key. See Osheroff v. Rauch Weaver Millsaps & Co., 882 So. 2d 503, 506 (Fla. 4th DCA 2004). "Florida law regarding setoffs is found in sections 46.015(2), 768.041(2), and 768.31(5), Florida Statutes (1997)." D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003) (footnotes omitted). Pertinent here is section 46.015(2), which provides:

> At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.

(Emphasis supplied.) With respect to section 46.015(2) and the other provisions, our supreme court has said: "Each of these statutes presupposes the existence of multiple defendants jointly and severally liable for the same damages." D'Angelo, 863 So. 2d at 314.

The allegedly malpracticing lawyers who settled with the McCallas were not jointly and severally liable with Kenyon, the construction company whose defalcations required that lawyers undertake the McCallas' representation to begin with. This is significant for the reasons explained in Wells:

> In rejecting the argument that the plaintiff will receive an impermissible double recovery if the total amount paid in settlement is not set off, the court in Neil[ v. Kavena, 176 Ariz. 93, 859 P.2d 203 (Ct. App. 1993)] pointed out:

9

The single-recovery rule, which historically permitted defendants a credit for amounts paid in settlement by other defendants to prevent a plaintiff's excess recovery, was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. Now, the respective shares of the liability of multiple defendants can be determined. Each defendant may settle his portion and such settlement neither affects the amount of harm caused by the remaining defendants nor the liability. The settling defendant simply has paid an agreed amount to "buy his peace" and the non-settling defendant has no right to complain that the settling defendant paid too much.

176 Ariz. at 97, 859 P.2d at 207 (citations omitted). The court also rejected the suggestion that the plaintiff will receive a "windfall" if the total amount paid in settlement is not set off:

Settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding the risk and expense of trial. Given these components of a settlement, "there is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages."

Id. at 96, 859 P.2d at 206 (citations omitted) (quoting Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 431-32 (Tex.1984)).

659 So. 2d at 252. Here the two actions, Case No. 16-2008-CA-005588 against

Kenyon and the malpractice claim against Mr. Greene and others, simply were not,

10

as the appellees contend, "two separate lawsuits filed to recover the very same damages."

Nor does the present case raise the spectre of exposure on the part of Kenyon, Mr. Herring, or Mr. Young to double liability. Thus far, indeed, they have not paid a penny toward satisfying the judgment against Kenyon. Again, moreover, the Florida Supreme Court has rejected the argument that a potential windfall, without more, requires a setoff. See Gouty, 795 So. 2d at 964 ("In other words, as long as a defendant does not pay more than his or her percentage of fault, that defendant is not entitled to contribution from another tortfeasor or entitled to a setoff from a settling defendant. However, if the defendant is required to pay damages on the basis of joint and several liability, that defendant's rights of contribution and setoff remain unchanged.").

In the legal malpractice settlement agreement, moreover, the McCallas specifically retained "any rights that they may have against any entity that [was] not a party" to the settlement. The appellate courts in Florida have recognized the "'deeply rooted principle of Florida law that the intent of the parties controls interpretations of their releases.'" Rosen v. Fla. Ins. Guar. Ass'n, 802 So. 2d 291, 295 (Fla. 2001) (quoting Auto-Owners Ins. Co. v. St. Paul Fire & Marine Ins. Co., 547 So. 2d 148, 150 (Fla. 2d DCA 1989)); see also Steil v. Fla. Physicians' Ins. Reciprocal, 448 So. 2d 589, 591 (Fla. 2d DCA 1984) ("Clearly, the intent . . . was

11

not to release the carrier."). The present case brings to mind our supreme court's decision in Stephen Bodzo Realty, Inc. v. Willits International Corp., 428 So. 2d 225, 227 (Fla. 1983), where a written agreement had released one of two joint and several obligors but not the other. The Willits court said[3] that "[t]o allow these respondents to escape this obligation by relying on a document executed by others who had no intention of releasing them is the epitome of manifest injustice." Id. at 227.

Reversed and remanded.

MAKAR and WINOKUR, JJ., CONCUR.

---

[3] Justice Ehrlich elaborated:

> Before June 1980, Florida was one of the very few states that still adhered to the early common law that the release of one joint and several obligor releases all others. 66 Am.Jur.2d Release § 35 (1973). The harsh effects of the rule become obvious when the facts of the instant case are examined. There is no dispute in this lawsuit over the fact that respondents Licron Corporation and Siemens owe petitioners the sum of $197,000. It is also undisputed that none of the parties to this agreement intended that Licron Corporation and Siemens be released from their obligation. To allow these respondents to escape this obligation by relying on a document executed by others who had no intention of releasing them is the epitome of manifest injustice.

Stephen Bodzo Realty, Inc. v. Willits International Corp., 428 So. 2d 225, 227 (Fla. 1983).

12