# Third District Court of Appeal

## State of Florida

Opinion filed October 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-112
Lower Tribunal No. 12-23112
_____


**Luis Antonio Nieto Villamizar, etc.,**
Appellant,

vs.

**Luna Capital Partners, LLC, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Phillip T. Crenshaw (West Palm Beach); Glass Law Office and Lisa Paige Glass (Boca Raton), for appellant.

Hinshaw & Culbertson and John C. Lukacs and Maureen G. Pearcy, for appellees.


Before ROTHENBERG, C.J., and SALTER, and LOGUE, JJ.

SALTER, J.

Judgment creditor Luis Antonio Nieto Villamizar ("Mr. Nieto") appeals a final summary judgment entered against him and in favor of four entities impleaded by Mr. Nieto in proceedings supplementary. Mr. Nieto impleaded the entities as the purchaser of, and recipients of sales proceeds produced by, the judgment debtor's property sold before Mr. Nieto's judgment against the judgment debtor was entered. Based on the analysis which follows, we affirm the final judgment.

Lis Pendens, Sale, and Judgment

Mr. Nieto commenced a lawsuit in 2012 to enforce a series of eight unsecured promissory notes against Luna Developments Group, LLC ("Luna Developments"), and Bal Harbour Quarzo, LLC ("Bal Harbour Quarzo"), defendants (and, ultimately, judgment debtors).[1] Initially, Mr. Nieto's complaint to enforce the notes included equitable lien claims allegedly encumbering (1) 145 Broward County condominium units (in four buildings) owned by Luna Developments, and (2) a hotel and two apartment buildings in Miami-Dade County owned by Bal Harbour Quarzo. Mr. Nieto filed and recorded notices of lis pendens over all of those properties.

The trial court granted a motion to dismiss the equitable liens and to discharge the notices of lis pendens. Mr. Nieto did not seek review of the non-final order

---

[1] Mr. Nieto held two of the notes individually. He held a power of attorney from family members who were the payees on the other six notes. Collectively the notes exceeded $1,000,000.00. See Villamizar v. Luna Dev. Grp., LLC, 202 So. 3d 905 (Fla. 3d DCA 2016).

2

discharging the recorded notices of lis pendens.[2]  The third amended complaint

included eight counts for collection of the eight individual promissory notes; it did

not seek enforcement against any of the properties of Luna Developments or Bal

Harbor Quarzo.

Following a non-jury trial, Mr. Nieto obtained judgments on two of the eight

notes against Luna Developments, but the trial court dismissed the six counts

involving the other six promissory notes.  Mr. Nieto successfully appealed the

dismissal, and the case returned to the trial court in 2016; Villamizar, cited in note 1

above.

After a non-jury trial in January 2017, Mr. Nieto obtained six amended final

judgments against Bal Harbour Quarzo (three of the promissory notes) and Luna

Developments (three of the remaining notes).  The judgments against Bal Harbour

Quarzo were satisfied in July 2017 from proceeds of the sale of property owned by

---

[2]  The consensus among Florida appellate courts is that orders granting or discharging recorded notices of lis pendens, and orders relating to the bonds posted in connection with such notices, are more appropriately reviewed via certiorari rather than as injunction-like non-final orders appealable under Florida Rule of Appellate Procedure 9.130(a)(3)(B).  Bankers Lending Servs., Inc. v. Regents Park Inv., LLC, 225 So. 3d 884, 885 (Fla. 3d DCA 2017).  Our own decisions on the point, however, "did not abrogate prior decisions of this Court concluding that we have appellate jurisdiction to review such non-final orders under Florida Rule of Appellate Procedure 9.130(a)(3)(B)." Rodriguez v. Guerra, 43 Fla. L. Weekly D900, n.1 (Fla. 3d DCA Apr. 25, 2018).

that entity, leaving uncollected judgments of approximately $1.2 million against Luna Developments.

Proceedings Supplementary

In May 2017, based on documents obtained in efforts to execute on the judgments against Luna Developments, Mr. Nieto filed his complaint in proceedings supplementary against the four appellees: Luna Capital Partners, LLC ("Luna Capital"),[3] Silverpeak Real Estate Finance, LLC ("Silverpeak"), SPREF WH II, LLC ("SPREF"), and Wilmington Trust, National Association, as Trustee ("Wilmington Trust").[4]

Luna Capital purchased 145 condominium units from Luna Developments Group for $13,175,000.00 on July 9, 2015 (during the pendency of Mr. Nieto's lawsuit on the unsecured promissory notes, but before trial was concluded and judgments were entered on any of the notes). Silverpeak held a July 9, 2015, mortgage and other collateral regarding the condominium units purchased by Luna Capital. SPREF allegedly received an assignment of the Silverpeak mortgage and

---

[3] Luna Developments (the judgment debtor/seller) and Luna Capital (buyer, impleaded defendant, and appellee) are not related entities or under common control. They share "Luna" in their respective company names because the condominium properties at issue in the case are within four phases of "Luna at Hollywood Condominium."

[4] Wilmington Trust served as Trustee of the COMM 2015-CCRE25 Mortgage Trust Commercial Mortgage Pass-Through Certificates.

4

collateral in December 2015. Finally, Wilmington Trust, Trustee, received a further assignment from SPREF of the same mortgage and collateral that were initially granted by Luna Capital in its July 2015 purchase.

Mr. Nieto's 2017 complaint in proceedings supplementary alleged that the July 2015 sale by Luna Developments—which, according to the record, had no relationship to Luna Capital other than the relationship of buyer and seller—was a "unique and fraudulent process to avoid obligations," accomplishing the conveyance of Luna Developments' only remaining assets to Luna Capital and the application of any net proceeds of sale to creditors other than Mr. Nieto (though Mr. Nieto was not then a judgment creditor). The four impleaded supplemental defendants, appellees here, moved for final summary judgment on the basis of their affirmative defenses that the 2015 sale was in good faith and for reasonably equivalent value.

The trial court granted the impleaded defendants' motion, entered final summary judgment, and this appeal followed.

Analysis

We review the final summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). We consider whether the pleadings and summary judgment evidence before the trial court establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Id. at 131; Fla. R. Civ. P. 1.510(c).

Mr. Nieto argues here that two genuine issues of material fact precluded the entry of summary judgment. First, he contends that the 2015 sale by Luna Developments to Luna Capital "was permeated with indications that third parties (including Nieto) had an interest in the [145 condominium units], and that these indications gave rise to a duty for [Luna Capital] to inquire and to an imputation of implied actual notice of what that inquiry would have revealed—dozens of claims and judgments totaling tens of millions of dollars in liabilities."

Second, Mr. Nieto maintains that Luna Capital did not purchase the properties from Luna Developments for reasonably equivalent value "because, in comparing the original sale in 2006 to the current sale in 2015, even with inflation of approximately 1.64% per year, [Luna Capital] paid approximately 11% less per unit in 2015 than [Luna Developments] paid in 2006, and thus the prices are too close to constitute an arms-length transaction and to be for reasonably equivalent value."

Mr. Nieto also argues that he was not permitted to complete outstanding discovery, such that "the trial court should have denied the Motion for Summary Judgment as not being ripe for adjudication." We address these arguments in order.

"Imputation of Implied Actual Notice"

The fact that a purchaser unrelated to the seller is aware that the seller owes money to others is not the harbinger of an impending fraud. Sellers of property often sell so that they can pay some or all of their creditors. Luna Capital's awareness that

6

Mr. Nieto was suing the seller, Luna Developments, on <u>unsecured</u> indebtedness that had not yet been reduced to judgment, did not create a legal duty on Luna Capital's part. This is so because there is nothing in this record to suggest that Luna Capital was partially or totally controlled by Luna Developments at the time of the sale, or that these entities were under common control, or that they were anything other than a buyer and seller dealing at arm's length.

Proceedings supplementary allow the judgment creditor to seek execution on "any property of the judgment debtor not exempt from execution in the hands of any person," or "any property, debt, or other obligation due to the judgment debtor which may be applied toward the satisfaction of the judgment." § 56.29(1), Fla. Stat. (2017). When Mr. Nieto filed his "Complaint in Proceedings Supplementary" in May 2017, the 145 condominium units sold by Luna Developments in July 2015 were not "in the hands of" Luna Developments. Nor did Luna Capital, on this record, hold any property of Luna Developments or owe any money to Luna Developments that might be applied toward the satisfaction of Mr. Nieto's judgments.

Luna Capital's alleged knowledge of Luna Development's debts did not impose a legal duty on Luna Capital's part to assure that specific unsecured creditors of Luna Development were paid. Luna Capital naturally assured that all liens against

7

the condominium units were paid from the proceeds and satisfied of record, but payment of an unsecured claim in a lawsuit pending trial is not such a matter.[5]

Mr. Nieto's counsel and expert witness (a real estate transactional attorney) filed affidavits regarding Luna Developments' "Owner's Affidavit" and Luna Capital's duties in connection with the July 2015 closing. Mr. Nieto's expert witness affidavit correctly recited that Luna Developments' written representations included notice of "suits, actions or proceedings...with respect to the Real Property," as well as "judgments, claims, disputes, demands, or other matters pending against [Luna Developments] that could attach to the Property."

But Mr. Nieto's claims were on unsecured promissory notes and (following dismissal of the equitable lien claims) did not assert claims against the condominium units sold to Luna Capital. The expert's review of title documents argues that the notices of lis pendens ("even if subsequently discharged")[6] should have led Luna Capital to discover the promissory note lawsuit, "which, if successful, would have

---

[5] Mr. Nieto may consider the rights of unsecured creditors in bankruptcy to avoid "preferences," 11 U.S.C. § 547, to be equally available under the fraudulent transfer and "proceedings supplementary" statutes. While both theories of recovery may be in a creditor's toolbox, they involve separate elements of proof, are governed by different procedural requirements, and (in the case of preference claims) are determined in the United States Bankruptcy Courts.

[6] Although the discharge was obviously "subsequent" to the recordation of the lis pendens notices, the discharge order was actually recorded over two years before the sale of the properties to Luna Capital.

meant a judgment that would become a lien on the property of Defendant, Luna Developments." This is no more true for the promissory note lawsuit than it would be for a hypothetical pending personal injury lawsuit against Luna Developments— "which, if successful, would have meant a judgment that would become a lien on the property."

Section 48.23, Florida Statutes (2017), governs notices of lis pendens. A notice is only effectual if it describes the affected property, is recorded in the official records where the property is located, "and has not expired or been withdrawn or discharged." § 48.23(1)(a) (emphasis provided). In the present case, the notices of lis pendens were discharged by the court long before the July 2015 sale, and Mr. Nieto did not appeal that discharge.

Moreover, section 48.23(2) specifies that a notice of lis pendens "is not effectual for any purpose beyond 1 year from the commencement of the action and will expire at that time, unless the relief sought is disclosed by the pleading to be founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 against the property involved [unless, on motion, the court extends the time of expiration]." It is undisputed that Mr. Nieto's initial equitable lien claim against the condominium units was not based on a duly recorded instrument or a lien claimed under part I of chapter 713, and that the sale occurred long after the lis pendens would have expired even if it had not been discharged by the trial court's order.

9

The expert's bootstrapping theory of notice and duty is erroneous as a matter of law on the record and timeline before us, as is his hypothetical title examiner's calculation of Luna Developments' insolvency and "potential bankruptcy." Buyers may insist (by contract) on escrows to cover claims-in-process "which, if successful" might become a judgment lien after the closing, but an arm's length buyer at a fair market price is not under a legal duty to do so for the protection of such claimants.

Mr. Nieto's counsel also executed a "verified memorandum" regarding his interpretation of the fraudulent transfer statutes and case law. Counsel erroneously reads the term "good faith" in section 726.109(1), Florida Statutes (2017), within Chapter 726 ("Fraudulent Transfers"), to mean that an unrelated transferee has no notice that a transferor has creditors. Neither the statute nor applicable case law impose such a requirement. Nothing in Mr. Nieto's affidavits or his opposition to the motion for summary judgment suggests any actual intention to "hinder, delay or defraud any creditor of the debtor," because (as addressed in the following section) Luna Capital was unrelated to Luna Developments and paid a reasonably equivalent value.

Expressed another way, the bottom line of the seller's, Luna Developments', balance sheet did not change upon disposition of the condominium units in July 2015. The sale price it received was applied to pay liens on the properties and to pay creditors. There is no record evidence that Luna Developments "siphoned off"

10

the proceeds to its principals or "badge of fraud" transferees with the knowledge and assistance of Luna Capital. The transaction simply turned a physical asset into cash reasonably equivalent to the value of the asset, and those proceeds were distributed to the seller's creditors (none of whom were shown to be principals, family members of principals, or other transferees who might hold them for ultimate distribution to the seller).

Mr. Nieto's counsel's memorandum in opposition to summary judgment relied on cases such as McCalla v. E.C. Kenyon Construction Co., Inc., 183 So. 3d 1192 (Fla. 1st DCA 2016). In that case, the defendant construction company (Kenyon) was sued by the McCallas for breach of contract and other claims. Before final judgment was entered, Kenyon transferred "all or most of its assets" to two of Kenyon's principals "who knew of the McCallas' pending claims" without receiving reasonably equivalent value in exchange. Id. at 1193-94. The asset transfer "rendered Kenyon unable to satisfy the McCallas' judgment against it." Id. at 1194.

The First District held that the complaint alleged fraudulent transfers under sections 726.105(1) and 726.106, quoting this Court's opinion in General Electric Co. v. Chuly International, LLC, 118 So. 3d 325, 326 n.1 (Fla. 3d DCA 2013). Id. But in the present case, the record established that Luna Capital had no tie to Luna Developments or the other appellees.

"Reasonably Equivalent Value"

11

The record demonstrates that Luna Capital made its purchase offer for the condominium units based upon a business evaluation of the market, the property's income and resale value, and arm's length negotiations with Luna Developments. The record demonstrates that the sale of the condominium units resulted from a public real estate listing by a national brokerage firm. The summary judgment evidence included the purchase contract, closing statements and other evidence of a bona fide sale. During discovery, Luna Capital provided Mr. Nieto a copy of an appraisal and other information regarding the property obtained during the due diligence period before the sale.

In response, Mr. Nieto's affiant provided a back-of-the-envelope computation questioning whether the per-unit price was below market. Unsubstantiated "guesstimates" of what inflation might have done to values, or what appreciation or depreciation might have been expected during the period Luna Developments owned the property, create no genuine issue as against the competent, substantial evidence of an actual arm's length sale between "a purchaser willing but not obliged to buy" and "one willing but not obliged to sell." See ITT Cmty. Dev. Corp. v. Seay, 347 So. 2d 1024, 1027 (Fla. 1977); American Reliance Ins. Co. v. Perez, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (defining "fair market value").

Mr. Nieto did not file an appraisal or other evidence probative of actual market value of the condominium units as of the July 2015 sale.

12

<u>"Outstanding Discovery"</u>

Finally, Mr. Nieto argues that the trial court should have denied the motion for summary judgment because the impleaded defendants had not fully responded to written discovery requests. <u>See</u> <u>Kimball v. Publix Supermarkets</u>, 901 So. 2d 293, 295 (Fla. 2d DCA 2005). We find no abuse of discretion by the trial court on this point, however, as Mr. Nieto did not seek a continuance of the hearing on the motion for summary judgment and did not demonstrate the materiality of the discovery sought to be completed. <u>Vancelette v. Boulan S. Beach Condo. Ass'n, Inc.</u>, 229 So. 3d 398, 400 (Fla. 3d DCA 2017).

<u>Conclusion</u>

Mr. Nieto misreads the statutes on proceedings supplementary and fraudulent transfers to permit him, in effect, to backdate a judgment lien and demand payment from a closing that happened well before any such judgment was obtained and recorded (and even longer before the impleader of the buyer, its lender, and its lender's collateral assignee). If the buyer was a straw party or the transaction was a fraudulent transfer of Luna Developments' equity to a party holding for the benefit of the seller, so as to thereby hinder, delay, or defraud creditors, this might be a different case. But no such record is before us.

Upon our careful review of the summary judgment evidence before the trial court, and indulging appropriate inferences in favor of Mr. Nieto as required, the

13

summary judgment evidence establishes beyond any genuine dispute that the appellees negotiated and purchased at arm's length and in good faith. Beyond the use of the term "Luna" in their names (because of the name of the condominium complex), Luna Developments as seller and Luna Capital as buyer had no interrelated owners, controlling members, or other indications of joint control.

In addition, the summary judgment evidence demonstrates that the sale negotiations and price conform to the accepted definition of "fair market value," or, as relevant here, "reasonably equivalent value." We thus affirm the trial court order and final summary judgment in all respects.